Morelock *v.* Bernard.

15L 159
1pi 33

WINNEY MORELOCK *v.* POLLY BERNARD *et al.*

1. TENANTS IN COMMON. *Chancery pleadings and practice.* If one tenant in common of land is no party to a suit in which the interest of other co-tenants is sold, it is of no consequence to such tenant whether the proceedings are valid, or invalid, and he cannot be heard to impeach them.

2. CHANCERY PLEADINGS AND PRACTICE. *Erroneous .decree.* Upon a bill filed by the makers of a trust assignment of land to enjoin a sale under the trust until the correct amount of the secured debt is determined, a final decree without a cross-bill ordering the land to be sold to pay the debt ascertained, is probably of course, and, if not objected to by the complainants at the time, is clearly not void, but at most merely erroneous.

3. TENANTS IN COMMON. *Rights of purchasers from.* If some of the tenants in common convey the whole land by deed in fee, the grantee would take the interest of such tenants in common in the land, and partition would be made accordingly.

4. SAME. *Adverse possession. Limitation.* The exclusive adverse possession of land by one tenant in common, or the exclusive receipt of the rents and profits, without demand made by the other tenants, would be evidence of actual ouster, and will vest title if continued for the length of time prescribed by the statute of limitations.

FROM HAWKINS.

Appeal from the Chancery Court at Rogersville. H. C. SMITH, Ch.

F. M. FULKERSON for complainant.

McDERMOTT & KYLE for defendants.

COOPER, J., delivered the opinion of the court.

Ejectment bill to recover land, or an undivided part thereof, and to have partition, with an account

of waste, rents, etc. The chancellor held that de-
fendant, Polly Bernard, was entitled to three-sixths of
the land in controversy, that other defendants owned
two-sixths, and that complainant had title to one sixth,
ordered a partition, and the taking of proper accounts.
The defendant, Polly Bernard, appealed. The Ref-
erees have reported that the decree of the chancellor
should be affirmed. The appellant has excepted to
the report.

Winney Morelock, the complainant, was divorced
from her husband, Yancey Morelock, by a decree of
the chancery court, and afterwards by a settlement
with her late husband and the decree of same court,
rendered May 30, 1855, the title to certain lands
was divested out of him and vested in her and her
children, Henry, Prissy, William, George and Sam,
"as tenants in fee and co-parceners in common, to
share and share alike." The land consisted, as de-
scribed in the decree, of three tracts, first, a tract of
108 acres on which complainant resided at the date
of the compromise; second, a tract of 158 acres on
which the defendant resided; and third, a tract of
75 acres acquired under a distinct title. All of the
witnesses who speak on the subject, including the
complainant, agree that shortly after the decree vesting
title as aforesaid, the land was treated as divided
into two tracts, known as the upper and lower place,
and that complainant and her two children, Henry
and Sam, went into possession of the lower place,
and William, Prissy and George, of the upper place,
Yancey Morelock, the father and late husband, residing

with Prissy and her husband. The testimony leaves not a particle of doubt that this division, although only made in parol, was treated by all parties as an equitable partition of the land. Each of the tenants in common acted thenceforward in this view. Prissy and her husband sold before the year 1860, but only by parol, their share of the upper place, treating it as their entire share of the land, to Yancey More-lock. William, a few years after the war, swapped his interest in the upper with Samuel for his interest in the lower place, and Sam shortly afterwards sold the interest thus acquired in the upper place to Yancey and George. William bought Henry's interest in the lower place. These trades were all made without any writing, but were recognized and acted on by the parties, and these facts were known to the complainant, as she admits in her deposition. The result was that for many years the complainant and William have been occupying and claiming the lower place, and Yancey and George occupied and claimed the upper place, paying taxes and receiving the rents and profits.

Sam, the youngest son, committed a criminal offense, and was sent to the penitentiary for a term of years. On July 28, 1869, Yancey, William, George and Prissy, in order to secure the services of one Murrell, in an effort to release Sam from the penitentiary through an executive pardon, joined in a deed conveying by certain boundaries 243 acres of the land in trust to secure a note to Murrell for $500. A pardon was secured by Murrell, and Sam was released from the

penitentiary. Afterwards, the makers of the deed of trust filed a bill against Murrell to reduce the amount of his claim for compensation below the sum called for by the note, and such proceedings were had that, by a final decree, the sum was reduced to $275, for the payment of which the land was ordered to be sold, and was sold. The sale was confirmed by decree of May 3, 1875, divesting the title to the land described in the deed of trust out of the grantors and vesting it in the purchaser, Kyle, in fee, subject to redemption. The land was redeemed by one McDermott, who was put in possession under the order of the court on June 4, 1878. McDermott and Kyle had previously joined in conveying the land to the defendant, Polly Bernard, who was at once put in possession, and has since been in possession claiming the land as her own. The deed of trust purported to convey the land in fee as the absolute property of the grantors, with covenants of seizin, general warranty, right to convey and against encumbrances.

The original bill in this cause was filed December 4, 1878, by Yancey and Winney Morelock, and sought in effect to set up an agreement with Kyle and McDermott to extend the time of redemption of the land under the foreclosure sale. This bill was, upon demurrer, dismissed by the chancellor, who afterwards, during the term, gave leave to Winney Morelock to file an amended bill. The amended bill was, accordingly, filed June 7, 1879, against Polly Bernard, William, George, Sam and Prissy, the children of complainant, the husband of Prissy; and the children

Morelock v. Bernard.

of Henry Morelock, a son of the complainant who had died. Sam and the children of Henry were made defendants as non-residents of the State. None of these defendants, except Polly Bernard, ever entered appearance or filed an answer, and no publication seems ever to have been made for the non-residents.

The bill seeks to impeach the title of the defendant, Polly Bernard, to the land in controversy upon the ground that the foreclosure decree under which she claims was void. But it can be a matter of no consequence to the complainant and her rights whether the decree in question was valid or invalid. For, if valid the sale thereunder would not affect her interest in the land, she being no party to the proceedings; and, if invalid, the decree confirming the sale would be, even if void, a sufficient assurance of title to enable the defendant to connect her possession of the land with the possession of those persons whose titles were thereby divested out of them and vested in her. In either view the question would still be whether the titles of those persons were perfected or protected by the statute of limitations.

The objection to the validity of the decree is that it was made without being asked for in the bill, and without any cross-bill. The bill was filed to enjoin a sale under the trust deed until the true amount of the secured debt was ascertained. The grantors, trustee and beneficiary were before the court, and we are not prepared to say that it would not have been of course, after the debt was ascertained, to foreclose the

trust, even over the objection of the complainants, upon the well recognized rule of equity, that when the court has jurisdiction for one purpose it will exercise it for all purposes, so as to prevent further litigation. Be this as it may, we are certain that the exercise of the jurisdiction in such a case without objection, the court having before it the parties and the subject-matter, would at most only be erroneous, and therefore voidable and not void. The parties have acquiesced in the decree and sale, and do not now seek to impeach it in this suit. And the complainant cannot be heard to do so.

It is suggested also that the court improperly declared a lien in favor of the counsel of the complainants in that case for their fees. But the lien was declared on the land or the surplus proceeds of sale, and the record of the case shows that the sale was made under the decree of foreclosure for the trust debt, and the lawyers' fees, with the assent of the clients, paid out of the surplus proceeds of sale. The complainant has no interest in the matter.

In the case now before us, the decree of the chancellor, the report of the Referees, and the argument of the complainant's counsel assume that the trust deed, the decree of foreclosure and sale thereunder cover all the land settled upon Winney Morelock and her children. In this view the chancellor and the Referees hold that the defendant, Polly Bernard, is entitled to three-sixths or one-half of the land. The complainant has not excepted to the finding of the Referees. The result would be that the defendant

would be entitled to have allotted to her in a par-
tition of the land one-half of the whole in quality
and quantity, and the court, upon an obvious principle
of equity which we have repeatedly recognized, would
order that this half should be so laid off, if possible,
as to include the land actually purchased and occupied
by her. And inasmuch as the proof leaves little
doubt that the upper place occupied by the defendant
is about equal in value to the lower place occupied
by the complainant, the parties would in all proba-
bility stand in *statu quo ante bellum.*

But the decree in the divorce suit vests the com-
plainant with the title to land described as containing
341 acres, and the trust deed conveys land described
as containing only 243 acres. And every single wit-
ness in this suit, who deposes on the subject, recog-
nizes the existence of an upper and a lower place,
occupied as hereinbefore mentioned, and that the trust
deed covers the land known as the upper place.
There cannot be a particle of doubt that the posses-
sion of the defendant, Bernard, and those under whom
she claims has never interfered with the possession
of the complainant of the lower place. The com-
plainant herself, in her deposition, distinctly recognizes
the separation of the two places. "Henry, Sam and
myself," she says, "were to work on the lower place,
and the other three on the upper place." To the
question, who claims to own the lower place? she
answers: "William has the management of it, but I
claim it while I live." She concedes the occupation
of these places by her several children and her late

husband, as hereinbefore set forth, first under the verbal partition, and afterwards under the various trades made by them, of which she admits she had knowledge by hearing the parties talk about them, and set up their respective claims. The proof is all to the effect that Yancey and George, for at least ten years, and probably fifteen years before the commencement of this suit and the execution of the writ of possession of the foreclosure suit, had been in the actual, exclusive and adverse possession of the land in controversy, claiming it as their own under the various parol trades, receiving the entire rents and profits, and paying taxes. These facts are virtually admitted by the complainant in her deposition, and proved by the other witnesses. And by their deed of trust of July 28, 1869, the grantors undertake to convey the land in controversy absolutely by metes and bounds. Such a conveyance is necessarily the assumption of entire ownership, and adverse to the right and title of a co-tenant, if any. Possession under such a deed for a sufficient length of time would give title under the statute of limitations: *Waterhouse* v. *Martin,* Peck, 392. And notice of such a claim of title, in the absence of qualifying facts, would be notice of adverse claim. The complainant manifestly had knowledge of the trust deed, for she says that the children wanted to sell a part of the land to pay off the Murrell debt, and she told them they might do so, and she would make a right to it. The facts deposed to by all the witnesses leave no doubt that the possession of

Yancey and George Morelock was exclusive and adverse to their co-tenants.

Yancey Morelock does testify, however, that he never set up any claim while on the land "in opposition to Winney Morelock's right." He had previously testified that he had bought Prissy's interest in the upper place and always claimed it. George Morelock also testifies that he did not hold in opposition to his mother. The general character of both of these witnesses is impeached and not sustained. The complainant also testifies that Yancey and George "never held the land from her, nor tried to; I never heard that they did." But this, and other testimony inconsistent with the facts admitted by the witnesses themselves, should be read in the light of the complainant's claim to the land as set up in her deposition. She is asked: "Do you claim that you have entire control of all the land (both places) decreed to you and the children, and that they are only entitled to it after your death?" Her answer is: "I do claim that, and always did claim it." The witnesses might well say that they never held in opposition to such a claim, for the claim was without any foundation. And no doubt they have resorted to some such pretext as an excuse for their language. If they are to be understood as saying, without mental reservation, that they never held the land adversely to the complainant as their co-tenant, the statement is in direct conflict with the facts deposed by them, as well as the other witnesses, and palpably untrue.

12—VOL. 15.

It is conceded by the Referees, and the eminent counsel of the complainant, that exclusive adverse possession of a tract of land by one tenant-in-common, or the exclusive receipt of the rents and profits, no demand being made by the other tenants, would be evidence of actual ouster, and would vest title if continued long enough: *Hubbard* v. *Ward*, 1 Sneed, 279; *Saunders* v. *Hackney*, 10 Lea, 203; *Coal Creek Mining and Manufacturing Company* v. *Ross*, 12 Lea, 10. And we are clearly of opinion that such exclusive adverse possession has existed in this case for a length of time sufficient to vest the title in the defendant, Polly Bernard, and in the defendants, Yancey and George Morelock, under whom she claims, and to perfect her title to the land in controversy.

The exceptions to the report of the Referees will be sustained, the chancellor's decree reversed, and the bill dismissed with costs.