# Burns *v.* Headerick.

## (*Knoxville.* October 5th, 1886.)

1. STATUTE OF LIMITATIONS. *Adverse possession. Joint right of action of husband and wife.*

   The joint right of husband and wife to sue for wife's lands, is barred by seven, and by twenty years' adverse possession of the land by defendant, during her coverture.

   Cases cited and approved: Guion *v.* Anderson, 8 Hum., 298, 299; Weisinger *v.* Murphy, 2 Head, 679.

2. SAME. *Same. Dower. Remainderman.*

   If the land is covered by assigned dower, possession cannot be adverse to, and the statute of limitations does not begin to run against, the remainderman until the termination of the dower estate; and seven years' adverse possession from the latter date bars the remainderman,

---
Burns *v.* Headerick.
---

3. TENANTS IN COMMON. *Ouster. Adverse possession.*

  As between tenants in common, an ouster may be presumed in favor of one, who, with the knowledge of his co-tenant, and without objection, takes and holds, for many years, exclusive and adverse possession of land held in common; receives all rents and profits thereof; and conveys the land to secure his debts, and subsequently conveys it, in fee-simple, to a purchaser, who held adversely many years before suit was brought.

  Cases cited and approved: Hubbard & Wood *v.* Wood's Lessee, 1 Sneed, 279; King *v.* Rowan, 10 Heis., 677.

---

### FROM BLOUNT.

---

Appeal from Chancery Court of Blount County. December Term, 1884. W. B. STALEY, Ch.

R. N. HOOD for Burns.

CATES & SON for Headerick.

SNODGRASS, J. Complainant Susan Burns claims an undivided one-fifteenth interest in a tract of land described in the bill filed in this cause on the 4th of October, 1882.

She and her husband aver that she is one of the five heirs of Jas. T. Walker, being his sister, and he having died intestate and without other heirs than herself and brothers and sister, made defendants, about 1861, in the State of Louisiana, at which time and since Complainant Susan was a *feme covert;* that Jas. T. Walker purchased one-third of this land of Andrew Hicks. They seek an account of rents and a partition or sale for division of proceeds.

The defendants, now in possession under deeds purporting to convey the fee, set up the following defenses:

They say that Andrew Hicks did convey to Jas. T. Walker, on the 11th of August, 1855, an undivided one-third interest in the land described. The deed was not registered until 1861, after the death of Jas. T. Walker; and they say this purchase was made at the instance and for the benefit of Jas. Walker (the father of Jas. T.), who owned other interests in said land, and that the money and property paid for it was the money and property of Jas. Walker, and not of Jas. T. Walker; that Jas. T. Walker never went into the possession or exercised any acts of ownership over the interest conveyed to him, but that Jas. Walker, in the claim and exercise of ownership, took possession of it and held it, and on the 2d of January, 1858, conveyed seven undivided ninth interests in it, being these three ninths and four others Jas. Walker had purchased, and which included the whole of the shares in the tract except the shares of Elizabeth Brewer and Hannah J. Hatcher, to Jas. Thompson, trustee, to secure and save harmless B. D. Brabson, as surety of Jas. Walker on a note for $320 to one Rachael Gamble.

In 1859 John D. Headerick purchased of Jas. Walker those seven shares at the price of $1,600, and took his bond for title (never registered). Headerick paid off the amount secured in the trust deed and extinguished that, and on the 4th

of September, 1865, at the direction of J. D. Headerick, holding the title bond, and as a discharge thereof, executed a deed to the interests in the land sold by Jas. Walker to John D. Headerick, to W. W. and Jas. Headerick.

On the 6th of April, 1861, John D. Headerick purchased of A. M. Henry the two shares formerly owned by Elizabeth Brewer and Hannah J. Hatcher, which with the shares purchased from Jas. Walker, constituted the whole of the tract. W. W. and Jas. Headerick conveyed to John D. Headerick, on the 3d of August, 1868; and on the 24th of December, 1870, John D. Headerick conveyed to W. W. Headerick, and on the 3d of March, 1879, W. W. Headerick conveyed one hundred acres of the land to Defendants Nancy E. Cowan and Rachael C. McTeer.

The defendants say, further, that Jas. T. Walker was never in possession of the land now claimed, but that this interest was, from 1855 to 1859, in possession of Jas. Walker, held adversely by him until the sale to J. D. Headerick, and from that date until the 6th of April, 1861, Headerick held possession and control of said seven-ninths interest, and from this last date until the 4th of September, 1865, defendants had possession and control of the whole of the tract (except the dower of the widow of Thos. Hicks), and ever since, to the filing of this bill on the 4th of October, 1882; and they plead and rely upon the statute of limitations of seven years and of twenty years as a bar to complainant's action.

The Chancellor dismissed complainants' bill and they appeal.

In the evidence it appeared that Mrs. Hicks, the wife of Thos. Hicks, among whose nine children the land was held in undivided ninths conveyed to these different parties, had a dower interest in twenty-five or thirty acres of the land now here described or identified so as to make it an exception to the adverse holding of defendants; and complainants insist only upon a recovery of their interest in the part included in the dower, not controverting the correctness of the decree as to the other.

The Chancellor's decree was, however, correct in this as in other respects. The evidence is conflicting as to the payment by Jas. T. Walker. Two witnesses (brothers) testify that he paid a yoke of oxen and wagon at $150 the first payment, and confessed judgment for the remainder. Another proves that the oxen were his, and there is other evidence indicating this.

But, on the contrary, the vendor, Andrew Hicks, testifies that he made the trade with Jas. T. Walker, he thinks, in 1842, and thinks he made the deed at that time; has no recollection of having made it in 1855; that Jas. Walker paid him for the land as follows: one yoke of oxen and wagon at $150, and the other $150 in money. If this were all, the weight of evidence would be in favor of the claim of Jas. T. Walker; but this witness testifies, and the other testimony makes it conclusive, that Jas. Walker took possession of the land and

claimed and controlled it as his property, and that this possession and control continued until he sold it to Headerick, he having in the meanwhile conveyed it in trust to secure his debt before referred to. He received the rents and profits; and while there is some evidence that he spoke of the land, or part of it, as his son's, we are entirely satisfied to agree with the Chancellor that his holding was for himself alone, and that Jas. T. Walker never questioned his right to it, or attempted in his lifetime to dispute it.

Whatever may have been the fact as to the ownership of the oxen and wagon, and the confession of judgment, they (father and son) doubtless understood each other, and arranged it between themselves. It is certain that Jas. T. never interfered with his father's possession or asserted an adverse claim. He lived for many years after this deed to himself was executed, and took no control of the land, leaving here and dying without attempting to do so.

We are satisfied that he did not dispute, and had no right to dispute, the claim and possession of Jas. Walker of the entire interest conveyed in the deed of Andrew Hicks. But if he had, Jas. Walker's claim was for many years adverse and exclusive, and an actual ouster might be presumed, especially in view of Jas. T. Walker's apparent abandonment of what appeared to be a clear title under the conveyance of Andrew Hicks. *Hubbard & Wood* v. *Wood's Lessee,* 1 Sneed, 279, 280.; *King* v. *Rowan,* 10 Heis., 677, 678.

The defendants are protected under the statute in an adverse possession of more than twenty years, if Andrew Hicks is correct in his recollection of the date of the deed (1842); but at all events possession has been adverse since the date of the deed as set forth in the answer—11th August, 1855 — and more than twenty years have elapsed since then to the date of filing this bill, excluding time from 6th May, 1861, to 1st January, 1867.

But even as to that part embraced in the dower, complainants would be barred. A witness, whose deposition was taken, on 24th October, 1884, and another in 1883, prove that Mrs. Hicks died "some ten or twelve years ago." Assume that she died ten years before date of last deposition, and she would have been dead on 24th October, 1874. This suit was not brought until 4th October, 1882. More than seven years had elapsed since her death, and the joint right of action of Burns and wife then occurring was barred before the suit was brought. *Guion* v. *Anderson*, 8 Hum., 298, 299, 327; *Weisenger* v. *Murphy*, 2 Head, 674.

The decree of the Chancellor is affirmed, with cost.