FRANK F. HILL et al. v. FRANK F. HILL et al.

FRANK F. HILL, JR., C. N. GROSVENOR, JR., ROSS A. MATHEWS, Trustees, Appellants and Cross-Appellees, v. MARY HILL OVERTON, HELEN PARKER OVERTON, Executrix and Guardian, and National Bank of Commerce, Trustee, Appellees and Cross-Appellants. —403 S.W.(2d) 769.

Western Section at Jackson. September 9, 1965.

Certiorari Denied by Supreme Court May 2, 1966.

590

C. N. Grosvenor, III, and John T. Wilkinson, Jr., Memphis, for appellants and cross-appellees.

Newton P. Allen, Memphis, for appellees and cross-appellants; Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel.

AVERY, P.J. (W.S.). The issues in this cause pose the one legal question: Was S. Watkins Overton at the time of his death on December 2, 1958, seized and possessed of an indefeasible title to the real estate here involved by a recorded deed from his mother, Mary Hill (Hodgson) Overton executed June 2, 1943 and recorded in the Register's Office of Shelby County on June 10, 1943 in Book 1751 at page 422?

The correct answer to the posed question depends upon the title of owners of said involved tract of land back to a stipulated beginning date of February 19, 1887, Napoleon Hill and B. R. Sharpe, and their successors in title and possession.

This litigation is by supplemental bill and amendments thereto filed in the Chancery Court of Shelby County on

592

April 6, 1962, to an original bill filed in said Court on December 19, 1927.

To understand what this suit is about, we here copy the stipulation of facts signed by counsel for all the parties:

## "STIPULATION OF FACT

"It is hereby stipulated to by and between the parties by and through their Solicitors of record that the following is an agreed statement of fact:

### I.

"On February 19, 1887, Napoleon Hill and B. R. Sharpe purchased, as tenants in common, a tract of land known as the Sarah Jane Gift 110.11 acres, in Shelby County, Tennessee. Warranty Deed: Book 176, page 262, Register's Office.

### II.

"On May 30, 1887, the said Hill and Sharpe purchased, as tenants in common, an adjoining tract of land known as the Hill and Sharpe 212.61 acres of the Wilder and Harrison 272.15 acres, in Shelby County, Tennessee. Chancery Decree: Book 183, page 99, Register's Office.

### III.

"B. F. Sharpe died in 1897, leaving all his property, including his one-half interest in the Gift tract and the Wilder and Harrison tract, to his widow, Laura Sharpe. At this time part of the Gift tract had been sold, and the unsold portion consisted of approximately 71.5 acres. This property is the subject of this controversy, and for the recovery of which suit was filed by the Trustees.

IV.

"Napoleon Hill died in 1909, leaving all his property, including his one-half interest in the Gift tract and the Wilder and Harrison tract, to his widow, Mary Morton Hill.

V.

"On November 15, 1913, Mary M. Hill entered into an agreement with her three children, Frank F. Hill, Olivia Hill Grosvenor and Mary Hill Overton (Hodgson) that she would not change the terms of her will, which she executed on that date, and gave each child a copy thereof.

VI.

"On February 23, 1918, Mary M. Hill entered into an agreement with her three children to "make full gift" to them inter vivos of all the property which she had inherited from her husband, their father, Napoleon Hill. So that none of the children would 'obtain the slightest advantage over the other' she had each appoint an appraiser.

"In the division and allotment made pursuant to that agreement, MARY HILL HODGSON (the same person as MARY HILL OVERTON and MAY HILL OVERTON) was alloted Mary M. Hill's undivided one-half (½) interest in 212 acres of land in Nonconnah bottoms (referred to as being situated in the south side of Ball Avenue in the Commissioners' report) and took said interest by Warranty Deed of MARY M. HILL dated September 6, 1918, of record in Book 695, at Page 554 of the Register's Office of Shelby County, Tennessee, but the description of that Hill and Sharpe

property did not include the Hill and Sharpe 71.5 acres of land here in dispute.

## VII.

"Mary M. Hill died in January 1922. Following her death her Last Will and Testament was admitted to probate. By the terms of said Will all her real estate was devised to three trustees in trust until the death of the last of the testatrix's three children, at which time the property was to be divided among the grand-children and their issue, per stirpes, Mary Hill Overton was entitled to one-third of the income for life, and her children, including Watkins Overton, her son, were entitled to a share of the principal upon her death, if living.

## VIII.

"Prior to the death of Mary M. Hill, she had not made any conveyance of the legal title to the Gift tract.

"The land involved herein is unimproved real estate, consisting of a tract of about 71.5 acres situated in the Nonconnah bottoms in Shelby County, Tennessee, lying on either side of the Nonconnah Drainage Canal, in the area south of the circumferential expressway west of Airways, east of Highway 51 South and north of Brooks Road. It does not front on the expressway or the access road south of the expressway or on Airways or Highway 51 South or Brooks Road. Some of it is cleared and in cultivation, and some of it is not.

"This Hill and Sharpe 212 acre tract, referred to by the Complainants as the 212 acres on Ball Avenue, was situated immediately west of the Hill and Sharpe 71.5 acre tract here in question, referred to by Complainants

as the Gift Tract, and the southern part of the 212 acre tract was and still is similar in physical character to the 71.5 acre tract.

## X.

"On December 19, 1927, a bill was filed in this Court praying that the trust be declared terminated. All adult beneficiaries, including Watkins Overton and Mary Hill Overton, filed appearances and answers to the bill, supporting it. On January 28, 1928, Duncan Martin was appointed guardian ad litem of the minors, and proceeded to contest the bill.

## XI.

"On June 5, 1929, a final decree was entered in this cause settling the rights of the parties. This decree held that the quitclaim deed of the life beneficiaries was effective to convey only their life interests, and that the trustees was of the same effect as if they had submitted their resignations.

## XII.

"On October 16, 1929, C. N. Grosvenor Jr., Ross Mathews, and S. Watkins Overton were appointed by this Court as successor trustees. The reports of the original trustees had been submitted and approved by the Court, showing that the only real property belonging to the trust consisted of the nine parcels described in the quitclaim deeds.

## XIII.

"In February of 1944, the Trustees of the Mary M. Hill Estate filed a petition in the tax suit asking the Court to approve a compromise settlement, and all adult defendants, including Watkins Overton and Mary Hill

Overton, filed an answer to the petition, approving the same and asking that it be granted.

"In March of 1949, a final decree was entered in the tax suit, dismissing it and discharging the liens.

## XIV.

"On December 2, 1958, Walkins Overton died, leaving all his real estate to the National Bank of Commerce as trustee, and naming his widow, Helen Parker Overton, Executrix.

## XV.

"On December 20, 1960, Helen Parker Overton Executrix, and the National Bank of Commerce, Trustee, conveyed 62.233 acres to the two tracts, most of which was in the Wilder and Harrison tract, to Kieth and Patricia Taylor for a consideration of Ninety-three Thousand Three Hundred Forty-nine and 50/100 ($93,349.50) Dollars. That part of the land which lay in the Gift Tract was specifically excluded from the warranty, and conveyed by quitclaim only, as the Title Company would not guarantee title to the Gift Tract.

## XVI.

"In November of 1961, Attorneys for Helen Parker Overton, Executrix, and the National Bank of Commerce, Trustee of the estate of Watkins Overton, informed C. N. Grosvenor III that they had received an offer to purchase a part of the Gift Tract, but that the title company had refused to guarantee the title, and that suit would have to be filed against C. N. Grosvenor III and members of his family in order to clear the title.

## XVII.

"Watkins Overton died December 2, 1958. William White is also dead.

"It is further stipulated that the above is not, and does not purport to be a complete and comprehensive statement of the facts, but represents that portion of the facts which the parties, through their Solicitors of record, have been able to agree upon."

We also adopt and here show that part of the Memorandum Opinion found and filed by the Chancellor:

"On February 19, 1887, Napoleon Hill and B. F. Sharpe purchased, as tenants in common, a tract of land known as the Sarah Jane Gift 110.11 acres, in Shelby County, Tennessee.

"On May 30, 1887, the same Hill and Sharpe purchased, as tenants in common, an adjoining tract of land known as the Hill and Sharpe 212.61 acres of the Wilder and Harrison 272.15 acres in Shelby County, Tennessee.

"B. F. Sharpe died in 1897, leaving all his property, including his one-half interest in the Gift tract and the Wilder and Harrison tract, to his widow, Laura Sharpe. At this time part of the Gift tract had been sold, and the unsold portion consisted of approximately 71.5 acres. This property is the subject of this controversy, and for the recovery of which the supplemental bill before the Court was filed by the Trustees.

"Napoleon Hill died in 1909, leaving all his property, including his one-half interest in the Gift tract and the Wilder and Harrison tract, to his widow, Mary Morton Hill.

"On February 23, 1918, Mary Morton Hill entered into an agreement with her three children to "make full gift" to them inter vivos of all the property which she had inherited from her husband, their father, Napoleon Hill. The three children were Frank F. Hill, Olivia Hill Grosvenor and Mary Hill Overton, and these three children were also the sole heirs of both Napoleon Hill and Mary M. Hill. Three commissioners or appraisers were designated to divide the property which Mary M. Hill had inherited from Napoleon Hill.

"On August 27, 1918, the three commissioners or appraisers submitted their report, part of which showed that real estate in Shelby County, Tennessee, and other places, had been divided into three lots, valued as follows:

| | |
|---|---|
| 'A' | $887,229.33 |
| 'B' | $887,617.19 |
| 'C' | $887,074.25 |

"and that in order to equalize the valuations

| | |
|---|---|
| 'B' will pay 'A' | $ 30.92 |
| 'B' will pay 'C' | $256.00 |

"The report further states that lots had been drawn, and Division 'A' had been awarded to Mary H. Hodgson who is known generally in this record as Mary Hill Overton, division 'B' had been awarded to Frank F. Hill, and division 'C' had been awarded to Olivia Hill Grosvenor. The report contained a description of each parcel of property, and the value placed upon it by the commissioners. The Wilder and Harrison 212.11 acres was accurately described, and a correct plat of it included, as a part of division 'A' which was awarded to Mary Hill Overton. This parcel was valued at Eight

Thousand ($8,000.00) Dollars for the one-half interest. No mention was made in the report of the Gift tract. The report contained the following statement:

'The foregoing embraces a list of all the property of the estate of Napoleon Hill, which has been furnished us, or which we have been able to ascertain up to the present time.

'Further investigation will be made by the Commissioners, or by interested parties, if deemed necessary, and if additional property is discovered, subject to division under the terms of the authority conferred on the Commissioners, a supplemental report will be made.'

"In the division and allotment made pursuant to that agreement, MARY HILL OVERTON was alloted Mary M. Hill's undivided one-half (½) interest in 212 acres of land in Nonconnah bottoms (referred to as being situated on the south side of Ball Avenue in the Commissioners' report) known as Hill and Sharpe lands and took that interest by warranty deed of Mary M. Hill dated September 6, 1918. The description of that Hill and Sharpe property did not include a description of the Hill and Sharpe 71.5 acres of land here in dispute.

"Deeds were delivered evidencing the division of the lands made by the Commissioners or appraisers.

"Immediately subsequent to the 1918 division, MARY HILL OVERTON and LAURA C. SHARPE (the widow of B. R. Sharpe, who had died in 1897) took possession of all of the Hill and Sharpe land in Nonconnah bottoms, which included both tracts, renting out cultivatable portions for farming.

"Mary M. Hill died in January of 1922. The taxes on the Gift tract were paid up at this time, but the evidence does not show by whom the taxes were paid. Presumably, after 1918 the taxes were paid one-half by Mrs. Overton since she was in possession, with Mrs. Sharpe, of the land, and Mary M. Hill claimed no interest in the Napoleon Hill estate following the division made by the commissioners and appraisers. Following the death of Mary M. Hill her Last Will and Testament dated November 15, 1913, was admitted to probate. By the terms of that Will all of Mrs. Mary M. Hill's real estate was devised to three trustees in trust until the death of the last of the textatrix's three children, at which time the property was to be divided among her grandchildren and their issue, per stirpes. Mary Hill Overton was entitled to one-third of the income during her life, and Watkins Overton, her son, was entitled to a share of the principal upon her death.

"It appears that in the year 1928 it came to the attention of MARY HILL OVERTON that in the September 6, 1918 deed of MARY M. HILL the Hill and Sharpe, or Gift, 71.5 acres had been omitted therefrom.

"Complainants charge in their Supplemental Bill that Mrs. Overton, Mr. Overton and his Executrix or Trustee deliberately concealed the existence of the land from the Trustees and beneficiaries of the Hill Trust.

"In November of 1961, attorneys for Helen Parker Overton, Executrix, and the National Bank of Commerce, Trustee of the estate of Watkins Overton, informed C. N. Grosvenor III that they had received an offer to purchase the Gift tract, but that the title company had refused to guarantee the title, and that suit

would have to be filed against C. N. Grosvenor III and members of his family in order to clear the title.

"C. N. Grosvenor III examined the abstracts of title to the property furnished him by the attorneys for the Executrix and Trustee, and discovered the state of the record title to the property. He then informed the Hill trustees of the existence of the Gift tract, and that it was being claimed by adverse possession by the devisees of Watkins Overton. This was the first time any of the present trustees and complainants had knowledge of the Gift tract and the state of its title, and after making formal demands they filed this supplemental bill to recover the land.

"None of the present trustees under the will of Mary M. Hill were original trustees under that will and each of the present trustees was appointed to so act more than ten years subsequent to the entry in 1918 of Mary H. Overton upon the land now in question."

*   *   *   *   *   *   *   *   *   *

"Frank F. Hill and Olivia H. Grosvenor are the ancestors of the individuals for whose interests this supplemental bill now before the Court, primarily, was filed.

"Mr. William White, now deceased, handled Mrs. Overton's real estate matters from 1919 through 1931, and taxes on the land in question were paid by or for Mrs. Overton and Mrs. Sharpe, certainly from the year 1922.

"Mrs. Overton was represented by Mr. Elmer Harris, as her real estate agent, from 1932 until August of 1957, during which period the tillable portions of the land in dispute was occupied by various farm tenants of Mrs.

Overton and Mrs. Sharpe until the year 1938, and after 1938 by farm tenants of Mrs. Overton and her successor in interest, S. Watkins Overton.

"During the period from 1932 until August of 1957 the taxes on the Gift 71.5 acres were paid by Mrs. Overton and Mrs. Sharpe until Mrs. Overton bought Mrs. Sharpe's interest in 1938, after which they were paid by Mrs. Overton until she conveyed all the Hill and Sharpe land to her son, S. Watkins Overton, in 1943, and thereafter taxes on the land were paid by him.

"No taxes on the land in question have even been paid by or for the Trustees of the Hill Trust or by or for FRANK F. HILL, SR., OLIVIA GROSVENOR or their heirs or devisees.

"Neither the Trustees of the Hill Trust nor FRANK F. HILL, SR., OLIVIA GROSVENOR nor their heirs or devisees have ever rented, leased, occupied or exercised any dominion or control over any of the lands here in question.

"On June 2, 1943, Mrs. Overton conveyed all of the Hill and Sharpe land, including the land here in question, to her son, WATKINS OVERTON, which conveyance was promptly recorded, being filed for record on June 10, 1943.

"Upon the conveyance of the land to WATKINS OVERTON, he immediately went into occupation and possession of the land through the tenants who were renting and farming it, and continued such possession 'year by year' until his death on December 2, 1958."

Watkins Overton died testate on December 2, 1958, leaving his widow as executrix, Helen Parker Overton, and as trustee of his, the National Bank of Commerce.

Watkins Overton was for a period of time a trustee of the so-called Hill Trust, together with others until he resigned as such trustee of the Hill Trust in 1938 or 1939.

The original bill with its supplement, charges Mary Hill Overton, mother of Watkins Overton, her said son, and Helen Parker Overton, personally and as executrix, and the National Bank of Commerce with:

"* * * 'deliberately and carefully concealed the very existence of said tenth parcel of land from the other beneficiaries and Trustees of the Mary M. Hill Trust, as well as from this Honorable Court, thereby preventing the Trustees from making demands that they surrender the same together with the rents and profits, to its lawful owners'."

They further charge all defendants and cross-complainants, together with said Watkins Overton of:

"* * * 'gross fraud and deceit upon the Trustees and other beneficiaries of the said trust and also upon this Honorable Court'."

The bill further alleges that Mary Hill Overton and her successors in interest in the property here involved, have held it as a constructive trust, and that so holding said lands, all parties are entitled to the share in said property as stated in the original bill, "that tenants in common under the trust involved have never been ousted by cotenants, Mrs. Mary Hill Overton, her son, Watkins Overton, his trustees, beneficiaries, or Mrs. Watkins Overton and their children."

It is the contention of the defendants and cross-complainants that the title to the involved acreage, (71.5):

"1. Does become in equity the exclusive property of Mary Hill Overton upon the 1918 division of properties by her mother, Mary M. Hill,"

Or in the alternatives:

"2. Mary Hill Overton, mother of S. Watkins Overton and her successors in interest, became entitled to the fee as against her co-tenants by 20 years adverse possession."

3—Or if "mistaken in either of the foregoing positions, then S. Watkins Overton (to whom Mary Hill Overton conveyed the land on June 2, 1943) and his estate became entitled to good and indefeasible title in fee simple by seven (7) years adverse possession under recorded assurance of title."

4—If mistaken in all the foregoing positions, "then Mary Hill Overton and her successors in interest became entitled, as against the trustees and beneficiaries of the Mary Hill Trust, to the title to this land by Twenty (20) years adverse possession."

5—Or if mistaken in all the foregoing positions, "then S. Watkins Overton and his estate became entitled to good and indefeasible title to this land by seven (7) years adverse possession under recorded assurance of title."

The Chancellor, in his final decree, denied all the relief and legal contentions prayed for by the original complainants and decreed that the involved real estate was conveyed to S. Watkins Overton by warranty deed of his mother, Mary Hill Overton, on June 2, 1943 of record in Book 1751 at page 422 of the Register's Office of Shelby County, Tennessee, and that "the estate of S. Watkins Overton is still the owner of good and indefeasible title to

said land'', except small area passing under his will and conveyed by his executrix and trustees, to Patricia A. Taylor, that deed being of record in Book 4423, at page 243 in the Register's Office of Shelby County.

Defendants and cross-complainants except to that part of the decree which did not sustain their prayer No. 7 to the effect that the alleged quitclaim deed had been executed and delivered by Frank F. Hill and should be set up and established in his successors in interest, to that extent prayed a cross-appeal to the Court of Appeals at Jackson.

Complainants prayed a general appeal from the decree of the Chancellor to the Court of Appeals of Tennessee. The time for perfecting the appeals was fixed by decree at the ''maximum allowed by law.''

In cross-complainant's assignment of error counsel makes this statement:

''Admittedly this error would not be prejudicial unless an appellate court reversed the Chancellor on his other rulings in favor of the Overton estate. But out of an abundance of caution, since we do not presume to predict the rulings of this Honorable Court or the Supreme Court, we make this Assignment.''

In our view of the decree of the Chancellor it seems unnecessary to give much consideration to this assignment.

There is correspondence in the record hereinafter referred to dated January 23, 1929, and there is exhibited carbon copy of an unexecuted quitclaim deed dated ''December ———1928'', which was evidently drawn for the express purpose of being executed by Frank F. Hill and his sister, Mrs. Grosvenor, purporting to quitclaim the

interest that they each might have in the involved parcel of land, which was devised to their mother, Mrs. Mary Morton Hill and by her, in the distribution of her estate, omitted from the allocation by the trustees to either of them, so far as a separate description of the real estate is concerned.

While there is some indicating proof by correspondence between the parties who knew of the business transactions between the three children of Mrs. Mary Morton Hill, including the drafting of said deed instrument, that Frank F. Hill is said to have signed, in a letter from A. M. Brinkley to Mrs. Overton containing the following statement:

"I am writing you regarding the Quit Claim Deed covering the Hill Sharpe property on Ball Ave. Mr. White has gotten Mr. Hill to sign the Deed and I am today turning the papers over to Mr. Kyser to get Mrs. Grosvenor to sign. I hope to have this matter settled in a few days."

Mr. Brinkley was in the real estate business and had been managing Mrs. Mary Hill Overton's real estate for quite a long while and Mr. Kyser was her attorney.

Mr. Brinkley testified that the signature on this letter was his genuine signature, but said:

"* * * I just merely handled the details of transmitting information and so forth to her * * *.

"I would think the statements I made in this letter would be true, to the best of my knowledge and belief, based on information that might have been passed on to me by Mr. White."

The information relative to the knowledge of Mr. White, by his affidavit and the alleged affidavit of Mr. Shepherd, furnish only an explanation as to the consideration such quitclaim deed would carry, if executed, but does not show evidence of its execution.

■ We think this proof fails to be of such probative value as to justify the Court to set up a lost instrument, such as a deed, or to show that such was ever signed and delivered by Frank F. Hill to Mrs. Mary Hill Overton, and we think, as did the Chancellor, that such determination should not have been made by decree. Thus the assignment of defendants and cross-complainants is overruled.

■ We think the proof to show that a written instrument was duly executed and delivered, such as a deed, should be fully as great as in a case to set up a lost deed.

"When a written contract, such as a note of hand, deed, will, lease, partnership agreement, or other valuable instrument, or a Court record, has been accidentally lost or destroyed, under circumstances not attributable to any reprehensible negligence on the part of its owner, on his application and due proof the Chancery Court will set it up and enforce it." Gibson's Suits in Chancery by Crownover. Vol. 2, p. 225, 5th edition.

In Pearson v. McCallum, 26 Tenn.App. 413, 429, 173 S.W.(2d) 150, 158, in an opinion by Judge Ketchum relative to the sufficiency of proof to establish the execution and contents of a lost written instrument, he said:

"As to the sufficiency of the evidence, the law requires that the evidence offered to prove by parol the execution and the contents of a written instrument which is not produced shall be of the most satisfactory char-

acter, or what is known as clear, cogent and convincing evidence.''

It is noted Judge Ketchum said, ''the execution and the contents'', however, this language is no stronger than that required to prove the execution of the deed involved and its delivery, for even if executed it could not be decreed to be a deed unless delivered to the grantee or someone for him.

■ In this case the carbon copy of the involved deed shows what the contents would be of its original, but it standing alone, can neither show its execution nor delivery.

■ It is true that secondary evidence of the proper kind may be introduced to show that a document existed, and it is the province of the Court to determine whether such document ever existed. This secondary evidence is limited, however, to its competency by showing who last had the legal custody of the instrument. Circumstantially this record might show that the original of the certified copy of the deed was last in the possession of Mr. White or Mr. Brinkley or perhaps in the possession of Mr. Kyser, but this does not comply with that clear and cogent rule which would permit us to say the deed was executed by Frank Hill and delivered.

■ This does not mean that the proof offered in connection with the referred to deed is incompetent for all purposes, for as we view that evidence, it is a competent part of the whole proof on that issue of holding adversely by a tenant in common to others to show that the alleged tenants in common knew that Mrs. Mary Hill Hodgson Overton was at that time claiming this property by adverse possession and that such evidence with other com-

petent evidence, even if circumstantial, may establish knowledge thereof to Mr. Hill and his sister, Mrs. Grosvenor.

Passing now to appellants' assignments of error, they are:

## "I

"The Court erred in holding that Mary Hill Overton held such exclusive possession of the Mary M. Hill half interest in the Gift tract from 1918 until 1938 as would enable her to perfect a title to the half interest in the land by adverse possession.

## "II

"The Court erred in holding that there had been an ouster and disseizin of Mary M. Hill prior to her death, or of any of their cotenants after her death by Mary Hill Overton, S. Watkins Overton, or their successors in title.

## "III

"The Court erred in holding that the recordation of the deed of gift from Mary Hill Overton to S. Watkins Overton June 10, 1943 constituted such an ouster and disseizin of their cotenants and trustees as to enable him to perfect title to the Gift tract by adverse possession by seven years' possession under recorded assurance of title.

## "IV

"The Court erred in holding that Frank F. Hill and Olivia Hill Grosvenor knew that Mary Hill Overton was claiming the Mary M. Hill half interest in the Gift tract as an adverse possessor in 1928 or 1929, or that

a request for a quit claim deed made by one cotenant to another is such an ouster and disseizin as will enable the cotenant requesting such deed to perfect a title to the common property by adverse possession.

"V

"The Court erred in holding that Frank F. Hill, Olivia Hill Grosvenor, and Mary Hill Overton became in equity tenants in common of the Mary M. Hill half interest in the Gift tract upon the 1918 division under the agreement of February 23, 1918, or that Mary Hill Overton acquired any rights under that agreement in the half interest in the Gift tract.

"VI

"The Court erred in its failure and refusal to find that the National Bank of Commerce in Memphis, Trustee under the will of S. Watkins Overton, now holds the entire title in the Gift tract, being the property in litigation, as a constructive trustee for the trustees and beneficiaries of the Mary M. Hill trust.

"VII

"The Court erred in admitting into evidence the following described Exhibits, which were offered by the defendants, and cross-complainants, in support of their position that they acquired title to the property in litigation by adverse possession.

"Letter, dated January 23, 1929, from A. M. Brinkley to Mrs. M. H. Overton.

Quit Claim Deed, dated December ————1928.

Affidavit of William White, dated May 29, 1936.''

It is insisted that this quitclaim deed was signed by Frank Hill, delivered to one Brinkley, an agent for Mrs. Overton, and that he delivered it to William D. Kyser, Mrs. Overton's attorney; that Mrs. Grosvenor saw this document and refused to sign it.

There are notations on letter from Mr. Brinkley to Mrs. Overton, which letter was found in the files of Watkins Overton after his death in 1958. There also appears another letter from Mr. Brinkley addressed to Mrs. Overton dated May 30, 1930, showing that a controversy with respect to this land was being engaged in by Mrs. Grosvenor and her sister, Mrs. Overton. There is also some reference in Mrs. Overton's diaries to these controversies and other evidence will be referred to later in support of our conclusions.

We think it is competent to look at the many matters embraced in the record that occurred prior to 1938, as well as since, in order to determine whether or not the statute of limitations respecting adverse possession has perfected title in Mrs. Overton and her son, Watkins Overton, either or both, and we have come to the conclusion that if the title has been perfected by prescriptive right,—uninterrupted possession for 20 years or more, it must operate from the date that Mrs. Overton took possession of said one-half undivided interest in said land in 1918 after the division of Mrs. Hill's land to her three children, when it is said the Commissioners omitted to describe the involved tract or take it in consideration in making the division. There is, of course, no question involving title to the half undivided interest of the Sharpe heirs which they inherited from their mother and conveyed to Mrs. Overton by deed dated August 18, 1938.

Since this land involved in this cause was not described by the Commissioners in their report aforesaid when the division was made to the three children of Mrs. Hill, it is proper to refer to the effect of her will by which she named testamentary trustees, who also were named as executors of her will, but who never took possession of the Gift tract, or undertook to manage it, though she said:

"Said Trustees are to hold and handle the real estate and this trust is to continue until all of my children shall die, i.e. it shall terminate when I have no living children. The real estate shall then be divided equally between the lineal descendents of my children in this way: One-third of the real estate shall go to the children of FRANK F. HILL and if he have a child or children who shall die leaving issue, then said issue shall take what would otherwise have gone to the deceased parent; One-third of the real estate shall go to the children of OLIVIA HILL GROSVENOR and if she have a child or children who shall 'die leaving issue, then said issue shall take what would otherwise have gone to the deceased parent; and one-third of the real estate shall go to the children of MARY HILL HODGSON and if she have a child or children who shall die leaving issue, then said issue shall take what would otherwise have gone to the deceased parent.

" 'My intention being that my estate shall not go or be distributed under what is known as the Class Doctrine, but to the persons contemplated by the above provisions of this will. If any of the takers of the real estate title are minors, the Trustees shall make adequate provision for a title holder for the benefit of the minors with the income from any minor's part devoted to support, education and maintenance'."

It should also be said that the beneficiaries under that will, Frank F. Hill, Mrs. Olivia Hill Grosvenor and Mrs. Mary Hill Overton, formerly Mary Hill Hodgson, renounced all benefits under the will, and confirmed their act of renunciation by deed of conveyance to his or her children, if living at the termination of the trust who would take under the will, and in the case of Hill v. Hill, 159 Tenn. 27, p. 28, 16 S.W.(2d) 27, 28 our Supreme Court said:

"The chancellor sustained two grounds of the demurrer, in substance holding: (1) that the primary purpose of the testatrix in creating the trust was to preserve the estate and allow it to enhance in value during the life of the trust for the benefit of remoter descendants, rather than to provide an income for her children who are the beneficiaries of the net income during life; (2) that by the terms of the will the remaindermen took contingent interests subject to a reopening on behalf of the afterborn children of the groups provided for, and that the remainder could not vest until the termination of the trust, hence it was impossible to determine until after the death of Mrs. Hill's children what members of the group would take as contingent remaindermen."

The Chancellor in the instant cause decreed:

"Under the terms and provision of the Will of MARY M. HILL, the trust of which FRANK F. HILL, C. N. GROSVENOR, JR., and ROSS A. MATTHEWS are the present Trustees, terminated upon the death of her daughter, MARY HILL OVERTON on July 30, 1964. All of the persons entitled to take as remaindermen of the MARY M. HILL Trust under the Will of MARY M. HILL are parties hereto."

It should be further said that this record shows a tax suit for sale of a great deal of the property which came from the estate of Mrs. Hill and Mrs. Sharpe located in Shelby County where this referred to unconveyed tract, known as the Gift tract, was located.

The record is extremely clear that all taxes paid on the property involved after Mrs. Overton obtained the deed from the children of Mrs. Sharpe, were paid by Mrs. Overton or by her son, either or both. It is also presumed that as long as Mrs. Sharpe lived the taxes were paid by her and Mrs. Hill or to the date of the death of Mrs. Hill in 1922.

The origin of this delinquent tax seems to have been back in the depression days of the early thirties and at a time when the income from the respective properties was insufficient to pay the taxes. The trustees made some agreement by which there were some voluntary sales of pieces of property which had come from the estate of Mrs. Hill. We think it might be assumed, based on this record, that the only lands escaping from these tax sales located in this Nonconnah bottom area, may have been the remainder of this Gift tract along with whatever remained of the referred to Hill-Sharpe tract, and that these lands were practically worthless until after the depression years of the thirties or until after Mrs. Overton had obtained deed to the undivided one-half interest in said lands from the son and daughter,—only heirs of Mrs. Sharpe.

We think the record is very clear that the parties appointed to divide the property of Mrs. Hill to her three children were unaware that the Gift tract existed as a separate tract from that of the Wilder-Harrison tract,

previously owned by Napoleon Hill and B. R. Sharpe, and later by Mrs. Hill and Mrs. Sharpe as equal tenants in common. It was their intention to put all of said remaining parts of said two tracts in that division referred to as Division ''A'' and awarded to Mary Hill Hodgson (Overton), in accord with the agreement, and that Mrs. Hill, in making her deed, was unaware of that fact and that leaving it out of her deed to Mrs. Overton was an oversight.

Both parties in this cause rely for their respective contentions relating to adverse possession on Drewery v. Nelms, 132 Tenn. 254, 177 S.W. 946 (1915).

Perhaps there are no better statements in any of our cases, with respect to the contention of each party, than are to be found in Drewery v. Nelms wherein it is said:

''The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof and not by inference, every presumption being in favor of a possession in subordination to the title of the true owner. The possession of one tenant in common, as a general proposition, is the possession of all. If one tenant in common enters upon the land it will be presumed that he enters for all, and his holding will continue as the possession of all, by construction, each having entire possession of the whole. To overturn this relationship or entirety of possession by all, there must be some plain demonstration that the party in actual possession has repudiated the right of his cotenants. There can be no adverse possession or disseisin by one tenant in common except by some act or conduct on his part which will produce an actual ouster of his cotenants.

"This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice to his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession."

That opinion then refers to the fact, and so states, that a presumption may arise independent of the statute of limitations relative to title by prescription, saying:

"This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession. A presumption of title in such cases may also arise, upon the same ground that a grant from the state is presumed, by an exclusive and uninterrupted possession of the land by one tenant in common for 20 or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part.

"This is an inference of fact which may be deduced from the whole proof on the subject. This presumption arises independent of the statute of limitations."

■ Such presumption can only be raised by an inference from the proof as a whole on the subject of adverse possession, however, when this presumption of twenty years is not rebutted by a lapse therein, such as infancy,

relationships or circumstances that show the party claiming by adverse possession, did not intend to do so, it stands and the prescriptive title is perfected.

■ There is no question but that the taking of possession by parties, where neither had as much as twenty years posession, but together their period of adverse possession had been for more than twenty years, without interruption, the title and right by prescription prevailed. Eckhardt v. Eckhardt, 43 Tenn.App. 1, 305 S.W.(2d) 346.

In that case Judge Felts of this Court, later Justice Felts of the Supreme Court, discussed the principles governing ouster by tenant in common, both under the prescriptive period of twenty years and by registered deed.

In that opinion Judge Felts referred to the case of Marr's Heirs v. Gilliam, 41 Tenn. 488, as the leading case on the Drewery v. Nelms, supra, 132 Tenn. 254, 177 S.W. 946 and quoted a portion of the same quote hereinabove set forth from Drewery v. Nelms, on pages 615 and 616 of this opinion, and then he followed that statement, saying:

"To the same effect: Hubbard and Wood v. Wood's Lessee, 33 Tenn. 279, 286; Hilton v. Duncan, 41 Tenn. 313, 318-319; Morelock v. Bernard, 83 Tenn. 169, 178; Burns v. Headerick, 85 Tenn. 102, 107, 2 S.W. 259, 261; Townsend, Tenancy in Common in Tennessee, 24 Tenn. L.Rev. 853, 855, 856."

■ It is evident in the case now under consideration that Mrs. Mary Hill (Hodgson) Overton was in possession of the one-half undivided interest in said tract from 1918 until she purchased this one-half interest of the Sharpe heirs and thereafter the whole tract involved from the date of her deed from the heirs of Mrs. Sharpe

in 1938, to the date of her deed to her son, Watkins Overton in 1943, and that he was in possession without any break in the then undisputed claim of possession to the date of his death in 1958, and that since his death, in accord with the terms of his will, the trustees of his estate under his will continued in such possession with no claim of outstanding interest until after 1960, for the lands less a small part that had been conveyed to others.

During the entire time from 1918 to 1960 or later, the possession was never questioned. The mother of Watkins Overton, Mrs. Mary Hill (Hodgson) Overton, her son, and the defendants and cross-complainants in this suit, paid the taxes. Mrs. Hill's children, Frank and Mrs. Grosvenor, who now claim an interest in said land, never paid any taxes or received any income, or had any possession, by agent, tenant or otherwise. Mrs. Overton and her son during that time had possession of the land adverse to the world, consequently their prescriptive rights of twenty years or more ripened in their favor, unless they were guilty of fraud.

Fraud may be found to exist by circumstantial evidence, such as a collation of badges of fraud, however, we have read this record in its entirety and studied the excellent briefs, and agree with the Chancellor that there is not a semblance of fraud on the part of Mrs. Mary Hill (Hodgson) Overton or her son, Watkins Overton. Though there is no legal criticism to be levelled at the original complainants in their effort to obtain an interest in the involved property because of an obvious omission or mistake not made by them nor with their permission which has resulted, by time to ripen the title and possession of said land in defendants and cross-complainants.

We think the record is very clear, based upon the circumstances, as said in the opinions referred to herein and others, that both brother and sister of Mrs. Hodgson Overton, Frank Hill, Sr. and Mrs. Grosvenor had some notice that the parties were claiming to be the absolute and complete owners of said land, holding adversely to all of them and all other persons, as the Chancellor held the circumstances to so show.

Passing for a moment to the effect of the deed from May Hill Overton, the mother of Watkins Overton, to her said son, S. Watkins Overton, dated June 2, 1943, filed for record on June 10, 1943 in the Register's Office of Shelby County, which is admitted undertakes to convey an absolute fee simple title to the tract of land here involved, and incorporated within the description set forth in said deed which is the last conveyance by deed of said land, and contains a part of the Wilder-Harrison tract and the Sarah J. Gift tract, which the Chancellor held to be such as perfected his title under T.C.A. Section 28-201, which is the seven years adverse possession statute under recorded deed etc.

We think the Chancellor was correct. That property was a gift by his mother, but by a warranty deed purporting to confer an absolute fee simple title, and the land was continuously held by him from the date of that deed to the date of his death, which was more than seven years, and particularly since Mrs. Overton, his mother, had title perfected by prescription,—holding adversely more than twenty years. We think the statute operates and that he had such title by that particular deed so as to justify the Chancellor in having so held.

We feel that the evidence attacked by the assignments of error of the main appellants is competent in order to

show the whole history of events which relate to the management, rents and efforts to obtain correction of the tract involved by the Commissioners in 1918 and the possession of the land since that date.

We have not dealt with these assignments seriatim, nor do we think it necessary so to do, and thus what we have said in this opinion regarding either assignment applies in part to all.

We have omitted, as did the Chancellor, to hold that this land involved became, in equity, the property of Mary Hill Overton upon the division of her mother's land in 1918, though we feel it was descriptively omitted from the report of the Trustees and the deed or conveyance of Mrs. Hill. We agree that even though there was perhaps then a tenancy in common, Mrs. Overton and her son, Watkins, who succeeded her in immediate title as against all probable cotenants, have perfected an absolute title in said land and a clear right to alien it.

.We further agree with the Chancellor that even if the land involved passed into the Mary Hill Trust on the death of Mary Hill, the Trustees absolutely abandoned it after the division to the respective children of Mary M. Hill, and that by virtue of twenty years adverse possession, Mrs. Overton and her son had perfected their title by prescription against the right of all trustees, except those under the Watkins Overton will.

We further hold that the deed from Mrs. Overton to Watkins Overton having been recorded in the Register's Office of Shelby County for more than seven years prior to the bringing of this suit, and conveying, by its terms, an absolute fee simple title, that his title became, if not otherwise, an indefeasible title which he owned and held

at the time of his death and which became the property under his will, possessed by the trustees of his estate, in accord with the rights of the beneficiaries.

It seems to us indisputable that the trust created by the will of Mary M. Hill terminated on the death of the last of her three children, each and all three children died prior to the institution of this suit.

We think the Chancellor was correct in his opinion and his decree, and the assignments of error by all appellants, both complainants and cross-complainants below are overruled, and his decree affirmed. Two-thirds of the cost will be paid by the complainants below, who are the principal appellants, and one-third by the defendants-cross complainants.

Decree will be entered accordingly.

George O. Benton, Special Judge, and Bejach, J., concur.

Carney, J., not participating.