## JOHN O. ECKHARDT et al. v. MRS. GEORGIA RUTH ECKHARDT.—305 S. W. (2d) 346.

Middle Section. May 3, 1957.

Petition for Certiorari denied by Supreme Court, October 4, 1957.

(1)

2

Joseph L. Lackey and Philip M. Howse, Jr., Nashville, for appellants John O. Eckhardt, and others.

James M. Swiggart, Nashville, for Mrs. Georgia Ruth Eckhardt.

FELTS, J.   This suit was brought by complainants to set up title in themselves to a one-half undivided interest in fee, as tenants in common with defendant, in a house and lot known as lot No. 31 in McGavock's First Addition to Nashville, located at 1102 8th Avenue, North, and for an accounting for rents and profits.   Defendant pleaded the seven years statute of limitations and title by 20 years adverse possession.   The Special Chancellor sustained both defenses.   Complainants appealed.

Lots No. 31 and No. 30 were owned by Ella Jane Eckhardt, No. 30 being conveyed to her by deed in 1885 and No. 31 by deed in 1888.   She died intestate in 1889, and title to these lots vested for life in her surviving husband, Gus Eckhardt, as tenant by the curtesy, and the remainder in fee in their five children—two daughters who died intestate and without issue, and three sons whose names were W. C. Eckhardt, Walter P. Eckhardt, and Turner Henderson Eckhardt.   Walter P. Eckhardt died intestate in 1925, leaving three sons, John O. Eckhardt, Rudolph G. Eckhardt, and Walter Eckhardt, Jr., now the complainants.

Lot No. 30 (1100 8th Avenue, North) lies on the Northeast corner of 8th Avenue and Jefferson Street, and Lot No. 31 (1102 8th Avenue, North) lies immediately north of Lot No. 30, both lots fronting on the east side of 8th Avenue and running back east parallel with Jefferson Street.   On lot No. 30 there was a store building at the front and a dwelling house at the rear.   On lot No. 31

there was a six-room dwelling house. Gus Eckhardt, by himself and his tenants, held possession of both lots until his death in November 1935.

For many years Gus Eckhardt leased the store building (on lot No. 30) to his son, W. C. Eckhardt and the latter's wife, Georgia Ruth Eckhardt, the defendant herein, and the three of them lived in the dwelling on the rear of this lot. It appears that in 1926, W. C. Eckhardt, undertook to purchase the remainder interests of the others, subject to the life estate of Gus Eckhardt; and he took deeds from his brother, Turner Henderson Eckhardt, and his nephews, now complainants, conveying all their interests in lot No. 30 to W. C. Eckhardt and wife, Georgia Ruth Eckhardt. Turner Henderson Eckhardt died intestate and without issue in 1940.

There is some evidence that though these deeds included and conveyed only the grantors' interests in lot No. 30, W. C. Eckhardt thought they conveyed all their interests in both of these lots. There is also evidence that complainants were unaware that they had any further interest in the property or any interest in lot No. 31. It is undisputed that after the death of Gus Eckhardt in 1935, W. C. Eckhardt claimed the entire interest in both lots and held possession of them, he and his wife occupying and using the buildings on lot No. 30 and he renting the house on lot No. 31 to his tenants and receiving the rents.

W. C. Eckhardt's possession of both lots continued from 1935 until his death in 1946. He left a will, probated February 6, 1946, giving his wife, defendant herein, "all of my property of every kind and description, real, personal and mixed", without a description of any of

it. Upon his death, she took possession of the property, including Lot No. 31, and continued such possession until this suit was brought December 27, 1955, so that the continuous possession of her husband and of herself was from November 1935 until December 27, 1955, or more than 20 years.

■ The general principle is that there is a relation of trust between tenants in common, each having an equal right of entry and possession, and the possession of one is to be taken as a possession of all so that one's possession cannot be adverse to the others until there is a disseizin by him of the others by actual ouster. Moore v. Cole, Tenn., 289 S. W. (2d) 695, 697; Hydas v. Johnson, 28 Tenn. App. 126, 187 S. W. (2d) 534; Marr's Heirs v. Gilliam, 41 Tenn. 488, 499-501; Drewery v. Nelms, 132 Tenn. 254, 261-263, 177 S. W. 946, 947-948.

"That one tenant in common may oust his cotenant and hold in severalty is not to be questioned. But the sole, silent occupation by one of the entire property, claiming the whole and taking the whole profits, without an account to or claim by the others, accompanied with no act which can amount to an ouster or give notice to his cotenant that his possession is adverse, cannot be construed into an adverse possession." Marr's Heirs v. Gilliam, supra, 41 Tenn. 500; Drewery v. Nelms, supra, 132 Tenn. 262, 177 S. W. 948.

■ When Gus Eckhardt's life estate fell in and W. C. Eckhart took possession of lot No. 31 in 1935, the presumption was that his possession was also the possession of the other tenants in common, the complainants, and the seven years statute of limitations would not begin to run against them until he disseized them by an actual

6

ouster or such an act as gave them knowledge or actual notice that his holding was adverse to them.

■ We find no sufficient proof of such an ouster or any act by him giving them actual notice that his holding was adverse to them, nor anything except the mere fact of his holding lot No. 31, claiming it, and taking the profits, without accounting to them. But such holding was not under a registered assurance of title, as required by 1932 Code, section 8582 (T. C. A. sec. 28-201); and we think the proof failed to establish a possessory right in him under section 8584 (T. C. A. sec. 28-203).

Nor did his wife, defendant herein, who succeeded to his possession, have any registered assurance of title to lot No. 31. As we have seen, his will did not describe the property, and so was not an assurance of title but was too general to constitute constructive notice to complainants that their interests were being devised, and hence her holding under this will did not constitute an ouster of them or put the statute of limitations into operation against them. Woods v. Richardson, 190 Tenn. 662, 668, 231 S. W. (2d) 340, 342.

■ So, while she failed to make out her title to this lot by adverse possession under our statute of limitations, we think she did make out her title by prescription or 20 years exclusive and uninterrupted possession. Under the above authorities, she could tack her husband's possession to her own, and the two of them had exclusive and uninterrupted adverse possession for more than 20 years, claiming the entire interest, taking the whole rents and profits, without accounting to the cotenants. This was sufficient to warrant a finding of title in her under a grant that had been lost.

In the leading case of Marr's Heirs v. Gilliam, supra, the Court fully discussed the doctrine of title by adverse possession under our statute of limitations and also the doctrine of title by prescription or lost grant. After pointing out that there must be a "notorious act of ouster" by one tenant of the others, before the act of limitations will operate against the others, the Court said:

"It is, however, well settled that the exclusive and uninterrupted possession by one tenant in common of land for a great number of years—say for twenty or more—claiming the same as his own, without any account with his co-tenants, or claim on their part, —they being under no disability to assert their rights,—becomes evidence of a title to sole possession, and the jury are authorized to presume a release, an ouster, or other thing necessary to protect the possessor; and the action of ejectment by his co-tenants, in such case, is barred. This presumption is an inference of fact to be drawn by the jury, to whom the evidence is to be submitted" (citing cases, 41 Tenn. 501).

"Upon the same ground, a grant from the State, a release of an equity of redemption, the payment of a bond, etc., are presumed. But it may be rebutted by the infancy or coverture of the plaintiffs, or by the intervention of a particular estate, the relation of the parties, or other facts showing that the possession was not adverse to the owner, but by his permission or indulgence, or as his tenant" (41 Tenn. 501, 502).

Likewise in Drewery v. Nelms, supra, the Court discussed the doctrine of adverse possession, and, having done so said:

"A presumption of title in such cases may also arise, upon the same ground that a grant from the state is presumed, by an exclusive and uninterrupted possession of the land by one tenant in common for 20 or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part.

"This is an inference of fact which may be deduced from the whole proof on the subject. This presumption arises independent of the statute of limitations. It may be rebutted by the infancy of other disability of the parties, their actual relationship, or other facts showing the possession was not adverse but by the indulgence, permission, or as tenant of the owner." 132 Tenn. 262, 177 S. W. 948.

To the same effect: Hubbard and Wood v. Wood's Lessee, 33 Tenn. 279, 286; Hilton v. Duncan, 41 Tenn. 313, 318-319; Morelock v. Bernard, 83 Tenn. 169, 178; Burns v. Headerick, 85 Tenn. 102, 107, 2 S. W. 259, 261; Townsend, Tenancy in Common in Tennessee, 24 Tenn. L. Rev. 853, 855-856.

Upon the foregoing authorities, we think the proof adduced by defendant fully established her title to lot No. 31 by prescription or more than 20 years adverse possession under a lost grant; that for this reason the decree of the Special Chancellor was correct; and a decree will be entered here affirming the Chancellor's decree and adjudging the costs of the appeal against appellants.

Hickerson and Shriver, JJ., concur.