**Woodrow W. LIVESAY,
Plaintiff-Appellant,**

v.

**Jimmy KEATON et al.,
Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section,
Sitting at Knoxville.

Aug. 29, 1980.

Permission to Appeal Denied by Supreme
Court Dec. 29, 1980.

---

James S. MacDonald, Jenkins & Jenkins, Knoxville, for plaintiff-appellant.

Roy D. Crawford, Crawford & Crawford, Maryville, for defendants-appellees.

MATHERNE, Judge.

The plaintiff sues to clear his title to 137 acres of land on which he lives in Loudon County, Tennessee, alleging title by prescription as against the defendants who are tenants in common with the plaintiff. Also, the plaintiff claims title under the theories of resulting and constructive trusts. At the close of the plaintiff's proof, the chancellor sustained the defendant's motion to dismiss, and the plaintiff appeals that decision.

By deed, dated October 31, 1936, the plaintiff's father and mother, P. H. and Nela Livesay, purchased the land for $2500. The plaintiff is one of ten children of P. H. and Nela Livesay. P. H. Livesay died intestate about four months after the purchase and never lived on the farm. About two years after the purchase, Nela Livesay, the plaintiff and certain of his brothers and sisters moved onto the farm. Various brothers and sisters moved away, but Nela, the plaintiff and three of his sisters, Maude, Gertrude and Ila, continued to live on the farm until Nela died intestate in 1949. Maude and Gertrude have since died, but the plaintiff and Ila now reside on the farm.

The defendants are the children and grandchildren of the plaintiff's deceased brothers and sisters and one of the plaintiff's sisters, Maude Livesay, who at the time of the suit was incompetent and who has since died.

In about 1976, the Tennessee Valley Authority sought an easement across the farm and advised the plaintiff that it could not pay him for the easement because of the condition of the title to the farm.

By deed, dated January 5, 1977, two of the plaintiff's sisters, Nettie Livesay Pugh and Pearl Livesay Pugh, joined by Ben Keaton and Sampson Keaton, two of ten children of the plaintiff's deceased sister, Bessie Livesay Keaton, and also joined by, Raymond Keaton, a grandson of Bessie Livesay Keaton, conveyed their interests, if any, in the farm to the plaintiff and his sister, Ila Livesay.

By quitclaim deed, dated June 3, 1977, the plaintiff's sister, Ila Livesay, conveyed her interest, if any, in the farm to the plaintiff. Earlier, by deed, dated May 10, 1956, Lon Livesay, a brother of the plaintiff, conveyed his interest in the farm to the plaintiff. All of the plaintiff's living brothers and sisters, Lon Livesay, Ila Livesay, Nettie Pugh and Pearl Pugh testified that they claim no interest in the land and have executed deeds to clear title in the plaintiff.

The record fairly reflects that, at least, since the death of his mother in 1949, the plaintiff has treated the farm as his own. He has cultivated it, cut timber on it, built a barn, tool shed and silo on it and has settled boundary disputes with his neighbors. P. H. and Nela Livesay had purchased the farm on credit, and the plaintiff paid the entire indebtedness. The plaintiff, also, has paid all taxes assessed against the farm since it was purchased by his parents. Further, the plaintiff has made no accounting with his co-tenants, and they have asserted no claim against the land until shortly before this lawsuit was filed on July 28, 1977. The plaintiff's three sisters who lived on the farm performed farm and house work as did other rural women folk of the area. Although they did not receive wages,

they were supported with necessities by the plaintiff who received the farm income. At no time did the plaintiff expressly assert his claim to the farm to any of his co-tenants.

The only allegation in the complaint which states the plaintiff's claim to the land is, as follows:

The plaintiff would show to the Court that he has made every mortgage payment on said property, has paid every tax bill on said property for the last forty-one years, and has held and possessed such property openly, notoriously, continuously, and adversely during such time.

■ We agree with the chancellor that under the facts there was no ouster by the plaintiff of his co-tenants, and, therefore, the plaintiff did not hold the farm adversely to them. *Moore v. Cole* (1956) 200 Tenn. 43, 289 S.W.2d 695; *Marr's Heirs v. Gilliam* (1860) 41 Tenn. 488; *Drewery v. Nelms* (1915) 132 Tenn. 254, 177 S.W. 946.

The plaintiff, however, relies upon the doctrine of title by prescription, which claim is being pressed for the first time in this court. We note that this claim was not explicitly stated in the complaint, but if we treat the above-quoted portion of the complaint as sufficient to place the issue before the chancellor, then the plaintiff must still fail.

■ To establish title by prescription, the holder must prove each of the elements of that doctrine as stated in the charge given the jury in the case of *Morgan v. Dillard* (1970) 61 Tenn.App. 519, 456 S.W.2d 359:

1. Has the complainant, [prescriptive holder], been in exclusive and uninterrupted possession of the land in question for a period of more than twenty (20) years—claiming the same as his own, without any account with is co-tenants or claim on their part— *they being under no disability to assert their rights*? [Emphasis added]

2. Was the complainant's [prescriptive holder's] occupancy of the property in question by permission either actual or implied of the other [co-tenants]?

The foregoing states the elements necessary to establish a claim under the doctrine of title by prescription. *Drewery v. Nelms, supra; Marr's Heirs v. Gilliam, supra; Eckhardt v. Eckhardt* (1957) 43 Tenn.App. 1, 305 S.W.2d 346. If any one of the elements above-stated is not proven, then the doctrine is not applicable to the case. In the present lawsuit, the plaintiff did not prove that his co-tenants were "under no disability to assert their rights" during the period that the plaintiff held the property. Therefore, the chancellor correctly dismissed the lawsuit upon the defendants' motion to dismiss made at the conclusion of the plaintiff's proof.

The plaintiff, also seeks to establish his title under the theories of resulting and constructive trusts. The land was conveyed to the plaintiff's father and mother as tenants by the entirety. Even though the deed recites a consideration of $500 and the assumption of a debt owing to the Federal Land Bank, the sale was entirely on the credit—no money was paid by the plaintiff or his parents. The father died about four months later, and the plaintiff, thereafter, paid the entire consideration over the years, with the last payment being in the 1940's. The plaintiff did not, at the time of the purchase, obligate himself in any way to pay for the land.

■ To establish a resulting trust upon land, it is a general principle that the trust must arise at the time of the purchase, attach to the title at that time and not arise out of any subsequent contract or transaction. *McClure v. Doak* (1873) 65 Tenn. 364.

In recognition of this principle Judge Felts in *Greene v. Greene* (1954) 38 Tenn. App. 238, 272 S.W.2d 483, 487, wrote:

It is said that the source and underlying principle of all resulting trusts is the equitable theory of consideration. That theory is that the payment of a valuable consideration draws to it the beneficial ownership; that a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property. Pomeroy's Eq. Jur. (5th ed) secs. 981, 1031, 1037; 2 Lawrence on Eq.Jur. (1929 ed.), sec. 565.

The court then quoted Pomeroy's Eq.Jur. (5th ed), sec. 1037, as follows:

In order that this effect may be produced, however, it is absolutely indispensable that the payment should be actually made by the beneficiary ... or that an absolute obligation to pay should be incurred by him, as a part of the original transaction of purchase, at or before the time of the conveyance; no subsequent and entirely independent conduct, intervention, or payment on his part would raise any resulting trust. Pomeroy's Eq. Jur. (5th ed), sec. 1037.

See, also, *Walker v. Walker* (1925) 2 Tenn. App. 279, 291, wherein it is stated that a resulting trust arises, if at all, from the fact of payment of the consideration by the cestui que trust, and not from any agreement of the parties.

We, therefore, hold that, under the facts, a resulting trust did not arise in favor of the plaintiff.

■ A constructive trust is one that arises contrary to intention and in invitum, against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy. *Sanders v. Forcum-Lannom, Inc.* (1972), 225 Tenn. 637, 475 S.W.2d 172.

■ There is no allegation, proof, claim or inference from which a constructive trust could arise in favor of the plaintiff.

The judgment of the chancellor is affirmed. The cost in this court is adjudged against the plaintiff-appellant for which execution may issue, if necessary.

SUMMERS and EWELL, JJ., concur.