**Geraldine H. WALKER, et al., Plaintiffs–Appellees,**

v.

**Edwin MOORE, Defendant–Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 16, 1987.

Permission to Appeal Denied by Supreme Court Jan. 25, 1988.

Randy Wakefield, Solon Fitzpatrick, Carthage, for defendant-appellant.

Gary W. Dodson, Sparta, for plaintiffs-appellees.

## OPINION

TODD, Presiding Judge.

This is a partition suit in which the defendant claims the entire title to the exclusion of the plaintiffs by oral gift, adverse possession, prescription, laches, and payment of taxes for 20 years. The Trial Judge rejected defendant's exclusive claim, but awarded defendant a lien upon the proceeds of the partition sale to reimburse him for taxes and improvements less rents and profits. Defendant appealed.

Except as indicated, there is no controversy as to the facts.

All parties to the case are descendants of C.A. Moore who owned the property until his death in 1941. Prior to his death he told two of his sons, Hugh Lawson Moore and Alton Moore, that he wanted them to

have the land for taking care of him. Alton died in 1937, and Hugh remained with his parents on the land until the death of his father in 1941. The record contains no deed or will evidencing the expressed wish of C.A. Moore.

After the death of C.A. Moore, Hugh and his wife remained with the widow of C.A. Moore (Hugh's mother) on the land until her death in 1956. Hugh sold some timber from the land to pay the funeral expenses of his mother and divided the unused residue among the children of C.A. Moore, including himself.

After the death of Mrs. C.A. Moore in 1956, Hugh had the land assessed to him and he paid the taxes thereon until October 20, 1980, when he conveyed the land to his sons, Edwin and Donnel Moore. Donnel subsequently conveyed his interest in the land to Edwin Moore. By these conveyances, the defendant, Edwin Moore, claims all of the interest of his father, Hugh Moore, which, according to defendant, was the entire title to the land. Hugh Moore died in 1983.

Since acquiring record title to the land, Edwin Moore has paid taxes, rebuilt a house and built a barn and shed on the land and has made other substantial improvements with the knowledge of plaintiffs.

Absent the claim of Edwin Moore to the entire title, the plaintiffs and defendant together constitute all of the heirs of C.A. Moore, and there is no dispute as to the fractional interest attributable to each.

■ By his issue no. 5, defendant relies upon an oral gift from C.A. Moore to defendant's father, Hugh Moore. The only direct evidence supporting such a gift is the testimony of Mrs. Hugh Moore, mother of defendant, that she heard C.A. Moore say to Hugh Moore:

We don't want you to leave here. We want you to stay here and farm. Somebody's got to take care of it. You see, I ain't able to do anything at all. I want you to stay here and take care of me.

Mrs. Hugh Moore further testified that "he (C.A. Moore) told him (Hugh Moore) that he wanted him to have the farm for taking care of him". The gift is supported circumstantially by the fact that Hugh Moore did stay on the farm with his father and mother until their deaths, and continued to occupy and use the farm until 1980.

In *Mercy v. Miller*, 25 Tenn.App. 621, 166 S.W.2d 628 (1942), this Court affirmed a judgment rejecting a claim of oral gift of land and said:

(1) Despite Code, section 7831 (4), which requires transfers of real estate to be in writing signed by the transferrer, a parol gift of land coupled with an entry by the donee and adverse possession by him for more than seven years will vest him with a possessory or defensive right to the land, under the second section of the act of 1819, Code, section 8584. *Choate v. Sewell*, 142 Tenn., 487, 221 S.W., 190. But such a claimant has the burden of proving, by evidence entirely satisfactory, not only the gift, but also his adverse possession. *Jordan and Ransom v. Maney*, 78 Tenn. (10 Lea), 135, 145.

(2-5) The Chancellor saw and heard the witnesses in this case, and his decree comes here supported by a presumption that it is correct, unless the evidence preponderates against it. Code, sec. 10622; *Joest v. John A. Denie's Sons Co.*, 174 Tenn., 410, 416, 126 S.W.(2d), 312, 314. We think the evidence for defendant does not preponderate against the decree. The opportunity and facility for fraud in setting up parol gifts, after the death of the alleged donor, make it the duty of a court to give close scrutiny to evidence offered to prove such a gift. *Atchley v. Rimmer*, 148 Tenn., 303, 312, 255 S.W., 266, 30 A.L.R., 1481, 1486; *Chandler v. Roddy*, 163 Tenn., 338, 349, 350, 43 S.W.(2d), 397; *Nashville Trust Co. v. Williams*, 15 Tenn.App., 445, 452. To sustain such a gift, the proof must be "ample, clear and convincing" as to every fact necessary to make out the gift. *Atchley v. Rimmer*, supra; *Lenow v. Bank of Commerce & Trust Co.*, 4 Tenn. App., 218, 223; *O'Brien v. Waggoner*, 20 Tenn.App., 145, 153, 96 S.W.(2d) 170, 174. The only evidence of a gift was defendant's testimony that the deceased had

given her the house 30 years ago, and the testimony of other witnesses as to declarations by him that he had made such a gift. We think this was insufficient to establish the gift. *Atchley v. Rimmer*, supra. That case indicated that the unsupported testimony of the alleged donee ought not to be accepted as sufficient proof of a gift; and it held that a gift cannot be established by proof of declarations of the alleged donor alone. *Chandler v. Roddy*, supra. 25 Tenn.App. at 625, 166 S.W.2d 628.

It can hardly be said that Hugh Moore came into possession of the land until 1956 on the death of his mother, for it is more probable that the mother occupied the land by virtue of her widow's rights as then provided by law from the death of her husband until her death. Moreover, the act of Hugh Moore in distributing to the heirs of C.A. Moore the proceeds of the 1956 sale of timber was inconsistent with any absolute gift or any previous adverse holding against the heirs of C.A. Moore.

Any holding by Hugh Moore thereafter would be subject to the rules regarding co-tenants discussed hereafter.

Defendant relies upon *McDonald v. Stone*, 45 Tenn.App. 172, 321 S.W.2d 845 (1958). The opinion in that case states that the only issue on appeal was the amount of damages. Any statements of said opinion on any other subject are dicta.

Defendant also relied upon *McDavid v. McGuire*, Tenn.App. 1973, 526 S.W.2d 474. The decision in that case rested upon dedication and adverse possession, rather than oral gift.

The Trial Judge held there was no enforceable gift. The evidence does not preponderate against this finding which is therefore presumed correct. T.R.A.P. Rule 13(d).

■ By his second issue, defendant insists that he ousted his co-tenants holding possession, use, receiving rents and profits and paying taxes for more than seven years, thereby perfecting a defensive possessory title under T.C.A. § 28–2–103.

Defendant apparently concedes that, ordinarily a tenant in common is presumed to hold on behalf of himself and all other co-tenants and therefore the possession of one tenant in common is not ordinarily held to be hostile to the co-tenants. *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956); *Hubbard v. Wood's Lessee*, 33 Tenn. (1 Sneed) 279 (1853).

However, in *Valley v. Lambuth*, 1 Tenn. App. 547, (1925) this Court held:

... The rule seems to be that the holding of a co-tenant, openly, notoriously, exclusively, and exercising all rights of ownership, by cultivating the land, collecting the rents, enclosing the land, making improvements, selling timber, paying the taxes, for a long number of years, at least covering the period required by statute of seven years, or by prescription of twenty years, with the full knowledge of the co-tenants, and no settlements made or requested for rents and profits, the co-tenants not being under any legal disability, and with full notice and knowledge upon the part of the co-tenants of such adverse holding and claim by the tenant in possession, would constitute an actual ouster.

In *Marr v. Gilliam*, 1 Cold., 489, it is stated:

"It is well settled that the exclusive and uninterrupted possession by one tenant in common of land for a great number of years—say for twenty years or more—claiming the same as his own, without any account with his co-tenants, or claim on their part, they being under no disability to assert their rights, becomes evidence of a title to such sole possession, and the jury are authorized to presume a release, an ouster, or other thing necessary to protect the possessor, and the action of ejectment by his co-tenants, in such case, is barred.

While it is true *this creates but a presumption and this presumption may be rebutted* ..., the relation of the parties or other facts showing that the possession was not adverse to the owner, but by his permission or indulgence, or as his tenant...."

"As between tenants in common, an ouster *may* be presumed in favor of one, who, with the knowledge of his co-tenants, and without objection takes and holds, for many years, exclusive and adverse possession of land held in common; receives all rents and profits thereof; and conveys the land to secure his debts and subsequently conveys it in fee simple to a purchaser who held it adversely for many years before suit was brought." *Burns v. Headerick*, 85 Tenn., 102 [2 S.W., 259].

In this case it appears that W.E. Lambuth contracted for the purchase of this property at the price of sixteen thousand dollars ($16,000), and before the purchase was consummated invited his brother, Warner Lambuth, to become a partner with him in the purchase of the property; accordingly the deed from Duncan and wife to this 1240 acre tract of land was executed, conveying the property to cross-complainant W.E. Lambuth and his brother Warner Lambuth. This conveyance was made on September 4, 1888.

It is clear from the record that W.E. Lambuth paid the entire purchase price for this property, and that Warner Lambuth did not pay any part of the same. Warner Lambuth died in August, 1889, leaving surviving him as his only heirs at law, his two brothers, W.E. and James T. Lambuth.

It is also clear from the record, and the uncontroverted proof in the cause, that James T. Lambuth, during his lifetime never claimed any interest or share in this 1240 acre tract of land; that he well knew that his brother W.E. Lambuth was in the possession and control of this property during all those years, and claiming the same as his own, and exercising all rights of ownership over the property, and will full notice to James T. Lambuth never asserted any rights in the property; never requested an accounting for rents and profits; never denied the claim of W.E. Lambuth as being the sole owner, and never at any time objected or denied that W.E. Lambuth was the sole owner. James T. Lambuth died in 1901, more than seven years after the death of Warner Lambuth. Walter Lambuth, the father of cross-defendants, never made any claim to any interest in this property. He had knowledge of the fact that W.E. Lambuth was in possession of the property, renting it out, collecting the rents, selling the timber, and was not accounting to him, or to any one else for the rents and profits and sale of timber. Walter Lambuth died in 1908, seven years after James T. Lambuth died.

This, we think, constituted an actual ouster of James T. Lambuth and Walter Lambuth by adverse possession, and by actual notice of the adverse claim of W.E. Lambuth as the sole owner of the property. The chancellor took this view of the matter, and so decreed.

There was no material evidence offered at the trial of the cause controverting the adverse holding and ouster by W.E. Lambuth. Hence, *there being no material evidence offered controverting the claim of cross-complainant,* and the evidence of the witnesses sustaining the adverse holding and ouster of cross-complainant, *there remained no question of fact on this subject to be submitted to the jury.* (Emphasis supplied) 1 Tenn. App. at 566.

This suit was brought on February 27, 1984. The claimed ouster must have occurred prior to February 27, 1977, so as to complete the 7 years adverse possession prior to this suit. Since defendant did not receive his deed from Hugh Moore until 1980, the ouster claimed by defendant must necessarily have been brought about by his predecessor, Hugh Moore.

The evidence of such ouster by Hugh Moore is as follows:

Vada Moore, widow of Hugh Moore, testified that, "about 1971", Hugh Moore told his sister, Elizabeth, one of the plaintiffs, that she did not have anything there to sell.

Don Moore, brother of Edwin Moore, testified that in 1967, Hugh Moore told Elizabeth Green that she had no right to put a trailer on the property, that it was his and he ordered her to leave.

Vada Moore, widow of Hugh Moore, testified that in 1947, Hugh Moore told Clella Luna that if she did not want to repair the house to get out. (This was prior to 1956.)

Vada Moore, widow of Hugh Moore, testified that in 1979, Clella told Hugh Moore: "Don't worry about it, we all know that's your farm, that's your place".

Edwin Moore, the defendant, testified that in 1967, Clella said she hoped that Hugh would never let the place be sold.

Edwin Moore, the defendant, testified that in 1968 or 1969, he told Geraldine Walker, one of the plaintiffs, that C.A. Moore had given the place to Hugh Moore and that he was claiming it as his.

The defendant, Edwin Moore, testified that in 1957, he told Oscar Moore, brother of Hugh Moore that he didn't see how they could sell the place, "because it belongs to Dad".

The defendant, Edwin Moore, testified that in 1981 he told Elizabeth Green that C.A. Moore had given the land to Hugh Moore and she did not deny this. (This was after 1977.)

The defendant, Edwin Moore, testified that in 1983, Barbara Thompson, one of the plaintiffs, asked for permission to camp on the farm. (This was after 1977.)

Hugh Alton Luna, one of the plaintiffs, testified that Hugh Moore did what he wanted to do and he assumed the place was his.

Vada Moore, widow of Hugh Moore, testified that at some unstated time, Hugh Moore sold tobacco and did not account to the co-tenants for their share.

The defendant, Edwin Moore, testified that Hugh Moore paid taxes on the farm from the time he changed the taxes to his name in 1956.

Evidence in contradiction of ouster is as follows:

Elizabeth Green, sister of Hugh Moore, testified that she wanted him to have a place to live, that he admitted to her that he had no more interest in the land than any other land; and that he distributed proceeds of a timber sale to the heirs.

Geraldine Walker, granddaughter of C.A. Moore, testified that she "understood" that Hugh Moore had permission to occupy the property during his lifetime.

Hugh Alton Luna, grandson of C.A. Moore, testified that he heard his mother say that all heirs had agreed to let Hugh Moore live on the land, pay the taxes and take all profit except from sale of timber.

The Trial Judge found that neither ouster nor adverse possession was satisfactorily shown. Upon review of the pertinent testimony, this Court cannot say that the evidence preponderates against the finding of the Trial Judge which is therefore presumed correct. T.R.A.P. Rule 13(d).

No merit is found in defendant's second issue.

■ By his first issue, defendant contends that he holds title by prescription. The evidence supporting this insistence is the same as that stated above in connection with adverse possession. However, the requirements for prescriptive title (20 years) are not necessarily identical with those of statutory adverse possession.

In *Hubbard v. Wood's Lessee*, 33 Tenn (1 Sneed) 279, the Supreme Court said:

> [A]n exclusive adverse possession of the whole tract of land, or the exclusive receipt of the rents and profits—no demand being made by the other tenant, or, if made, refused, and his title denied— *may* be evidence of a disseizin or actual ouster. 33 Tenn. at 286. Emphasis supplied.

In *Marr's Heirs v. Gilliam*, 41 Tenn (1 Cold.) 488, the Supreme Court said:

> ... That one tenant in common may oust his cotenant and hold in severalty is not to be questioned. But the sole, silent occupation by one of the entire property, claiming the whole and taking the whole profits, without an account to or claim by the others, accompanied with no act which can amount to an ouster or give notice to his co-tenant that his possession is adverse, cannot be construed into an adverse possession. And this doctrine of adverse possession is to be taken strictly and must be made out by clear and posi-

tive proof, and not by inference, every presumption being in favor of a possession in subordination to the title of the true owner. *McClung v. Ross*, 5 Wheat. 116; 4 Dev. 223–290; 3 How. 674; 9 Johns. 164; Ang. on Lim. 91–99; 1 Sneed, 279–286. . . .

It is, however, well settled that the exclusive and uninterrupted possession by one tenant in common of land for a great number of years—say for twenty or more—claiming the same as his own, without any account with his co-tenants, or claim on their part,—they being under no disability to assert their rights,—becomes evidence of a title to such sole possession, and *the jury are authorized to presume a release, an ouster, or other thing necessary* to protect the possessor; and the action of ejectment by his co-tenants, in such case, is barred. *This presumption is an inference of fact* to be drawn by the jury, to whom the evidence is to be submitted. 4 Dev. 223–290; Cowp. 217; 6 Cow. 632; 1 Sneed, 279; Ang. on Lim. 93–99. It is made without any reference to our Statute of Limitations, and in no analogy to it. The contrary is sometimes elsewhere stated as the rule; but it is obvious that with us it must, in many particulars, stand independent of our statute; and so we have held. 3 Sneed, 176. Upon the same ground, a grant from the State, a release of an equity of redemption, the payment of a bond, etc., are presumed. *But it [502] may be rebutted by the infancy or coverture of the plaintiffs, or by the intervention of a particular estate, the relation of the parties, or other facts showing that the possession was not adverse to the owner*, but by his permission or indulgence, or as his tenant. 41 Tenn. at 500. Emphasis supplied.

In *Drewery v. Nelms*, 132 Tenn. 254, 177 S.W. 946 (1915), the issue was one of title between the successors of J.B. Jones and the successors of his brothers and sisters. J.B. Jones lived on the land with his mother, the owner, until her death in 1880. After her death, J.B. continued to reside on the land, paid the taxes, which were assessed to him, cut some timber which he never accounted for, and paid no rent to his brothers and sisters. When J.B. Jones moved off the place, one Monroe Richardson lived on the place with the permission of J.B. Jones, but paid no rent except taxes. The occupancy of J.B. Jones and Monroe Richardson lasted 20 years. The Supreme Court said:

This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice of his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must be its nature put the other cotenants upon notice that they are excluded from the possession. A presumption of title in such cases may also arise, upon the same ground that a grant from the State is presumed, by an exclusive and uninterrupted possession of the land by one tenant in common for twenty or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part.

*This is an inference of fact which may be deduced from the whole proof on the subject.* This presumption arises independent of the statute of limitations. It *may be rebutted by* the infancy or other disability of the parties, their actual relationship, or *other facts showing the possession was not adverse but by the indulgence, permission,* or as tenant of the owner. Disabilities may accumulate to rebut the presumption, which is unlike the statute of limitations. *Marr v. Gilliam*, 1 Cold., 488; *Hubbard v. Wood*, 1 Sneed, 279; *McClung v. Ross*, 5 Wheat., 116, 5 L.Ed., 46; *McCorry v.*

*King,* 3 Hump., 267, 39 Am.Dec., 165; *Brock v. Burchett,* 2 Swan, 27.

The testimony of these witnesses does not make out that clear and unmistakable proof necessary to show a holding by J.B. Jones to the exclusion of his cotenants of such character as will be held to presume that they knew he was claiming adversely to them. The testimony of Mrs. Mhoon and her husband is positive to the effect that *J.B. Jones was permitted to use and occupy the land during his life free of rent, except to keep up the improvements and pay the taxes.* The positive proof that he recognized this understanding in statements to other witnesses strengthens their testimony. The fact that his own son could not state that he claimed the entire title illustrates the weakness of the contention that his cotenants had notice of an adverse claim. The lapse of time and failure to account for rents are fully explained by positive testimony, and this overcomes any presumption of adverse holding. Take for granted that J.B. Jones did, at the times stated by the few witnesses on that question, offer to sell the property, and held out the idea that it was his own, such occasional claims on his part cannot give notice to the owners that he was repudiating his obligation and understanding with them, unless this was communicated to his cotenants. 132 Tenn. at 262 [177 S.W. 946]. Emphasis supplied.

In *Eckhardt v. Eckhardt,* 43 Tenn.App. 1, 305 S.W.2d 346 (1957), co-tenants sued to establish a one-half undivided interest in a city lot. This Court affirmed a judgment for the defendant and said:

... It is undisputed that after the death of Gus Eckhardt in 1935, W.C. Eckhardt claimed the entire interest in both lots and held possession of them, he and his wife occupying and using the buildings on lot No. 30 and he renting the house on lot No. 31 to his tenants and receiving the rents.

W.C. Eckhardt's possession of both lots continued from 1935 until his death in 1946. He left a will, probated February 6, 1949, giving his wife, defendant herein, "all of my property of every kind and description, real, personal and mixed", without a description of any of it. Upon his death, she took possession of the property, including Lot No. 31, and continued such possession until this suit was brought December 27, 1955, so that the continuous possession of her husband and of herself was from November 1935 until December 27, 1955, or more than 20 years.

. . . .

So, while she failed to make out her title to this lot by adverse possession under our statute of limitations, we think she did make out her title by prescription or 20 years exclusive and uninterrupted possession. 43 Tenn.App. at 4 [305 S.W. 2d 346].

In *Memphis Housing Authority v. Mahoney,* 50 Tenn.App. 117, 359 S.W.2d 851 (1962), this Court held that, where two co-tenants occupied a residence for more than 20 years, paid taxes, kept up repairs, collected and used rent, the evidence did not preponderate against the finding of the Trial Judge that the tenants in occupancy had not ousted the other tenants in common and the judgment against the tenants in occupancy was affirmed. The opinion, at page 123, 359 S.W.2d 851, calls attention to the fact that in *Eckhardt v. Eckhardt,* supra, the Trial Court's decision in favor of the tenant in possession was affirmed on a presumption of correctness.

In *Morgan v. Dillard,* 61 Tenn.App. 519, 456 S.W.2d 359 (1970) involved a situation similar to the present case. However, the trial jury found as a fact that the complainant's occupancy of the property was *not* by permission of the other heirs. Based upon this finding, this Court affirmed a judgment for the heir in occupancy.

The latest appellate decision on the subject, *Livesay v. Keaton,* Tenn.App.1980, 611 S.W.2d 581, held that the tenant in possession failed to establish title by prescription by omitting to show that none of the co-tenants were under disability. In the present case, it is shown that none of the co-tenants were under disability. How-

ever, the applicable rule is that title by prescription is a matter of inference of fact which the finder of fact may find or not find under the evidence adduced.

In the present case the Trial Judge found that title by prescription had not been established. The evidence does not preponderate against his finding which must be presumed correct. T.R.A.P. Rule 13(d).

No merit is found in defendant's first issue.

■■■■ By his third issue, defendant asserts that the plaintiffs were guilty of laches by delaying suit for 43 years after the death of C.A. Moore and six months after the death of Hugh Moore, thereby permitting defendant to believe that they had abandoned their claims and causing defendant to expend considerable money upon improvements.

Plaintiffs respond that they waited until after the death of Hugh Moore because they understood that all the heirs had agreed to allow him exclusive use of the land for his lifetime. This explanation was accepted by the Trial Judge, not only for the delay in suit but also as basis for refusing to recognize adverse possession or prescription.

The evidence does not preponderate against the factual basis of rejecting the defense of laches.

Courts are reluctant to sustain a defense of laches, and in a case where delay in filing suit can be reasonably explained or justified, such a defense will not be sustained. *Freeman v. Martin Robowash, Inc.*, 61 Tenn.App. 677, 457 S.W.2d 606 (1970).

Laches is not a bar where the delay is acquiesced in by the party asserting it or where he himself has been equally at fault. *Barnes v. Fort*, 181 Tenn. 522, 181 S.W.2d 881 (1944).

The doctrine of laches is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because a party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect, he had, perhaps, not

waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted, in either of these cases, lapse of time is most material. *In Re: Estate of Darwin*, Tenn.1973, 503 S.W.2d 511 and authorities cited therein.

In the light of the facts as found by the Trial Judge, in which this Court concurs, and the lien granted to defendant for improvements and taxes, it does not appear that laches is an effective defense to this suit.

No merit is found in defendant's third issue.

For the same reasons, defendant's fourth issue asserting estoppel is found to be without merit.

Defendant's sixth issue asserts that the evidence preponderates against the finding of the Trial Judge. In support of this issue, defendant offers no citations or arguments in addition to those presented in connection with previous issues which have been discussed heretofore.

No merit is found in the defendant's sixth issue.

By his seventh issue defendant insists that he should be allowed reasonable interest on 1980, 1981, 1982, 1983 and 1984 taxes totaling $581.78.

It appears that the Trial Judge granted defendant a lien to assure the refund of said taxes paid by him, but also charged defendant with the rental value of the property at $100.00 per month. Since no interest was allowed on either of these items, it would appear that defendant has no complaint as to interest. Stated otherwise, the rental more than satisfied the claim for taxes, so that nothing was due on taxes to draw interest.

■■■ Interest as a matter of right is purely statutory, unknown to the common law, and its positive allowance must be confined to those obligations and demands specifically enumerated in statutory provisions, and in cases not so included it remains, as at common law, a matter of discretion in the jury or chancellor to be allowed or not,

according to the facts presented. *Southern Construction Co. v. Halliburton*, 149 Tenn. 319, 258 S.W. 409 (1924).

No merit is found in defendant's seventh issue.

By his eighth issue, defendant contends that he should be allowed interest upon the $3,400.00 which the Trial Judge allowed him as expenses of survey and attorneys fees in the defense of a boundary lawsuit relating to the property. Defendant concedes that there is no evidence of the date he paid such expenses, but insists upon interest from the date of hearing, November 26, 1985. The rules heretofore cited in connection with the seventh issue are equally applicable to the present issue. No error is found in the exercise of discretion by the Trial Judge in respect to interest.

In summary, no merit is found in the issues presented by defendant.

The plaintiffs have presented two issues, of which the first asserts that defendant should have no credit for payment of 1980 taxes ($98.37) because the 1980 taxes were for the calendar year 1980, and defendant did not receive a deed from Hugh Moore until October 20, 1980, thus indicating that Hugh Moore was liable for the pro-rata part of the 1980 taxes from January 1, 1980, to October 20, 1980, (about $86.00). It is unquestioned that defendant paid the entire 1980 tax and that all owners benefitted from the payment. This Court sees no reason why plaintiffs should not be required to pay their fair share of a tax paid for them by a co-tenant. Even though Hugh Moore may have been obligated to pay the 1980 tax in consideration of the use of the property, he did not do so, and his son is not under any obligation to pay his father's obligation.

■ The Trial Judge referred several issues to the Master, among which was the amount due defendant as reimbursement for taxes paid. The Master reported $581.78, including 1980 taxes. The Trial Judge confirmed and adopted this finding. The concurrent finding of fact by the Master and Trial Judge has the same force and effect as the verdict of a jury approved by the Trial Judge. T.C.A. § 27–1–113,

*Coates v. Thompson*, Tenn.App.1986, 713 S.W.2d 83 and authorities cited therein.

No merit is found in plaintiffs' first issue.

By their second issue, plaintiffs insist that defendant is not entitled to reimbursement for the survey and legal expenses incident to defense of the boundary lawsuit.

■ After deciding the issue of title, the Trial Judge ordered a reference to the Master to determine the amount of rents and profits received by defendant, the amount of taxes paid and improvements made by him. The Master reported that defendant had expended $3,400.00 in defending a boundary dispute involving the subject property and an adjoining land owner, for which amount he was entitled to reimbursement. The Trial Judge concurred in and adopted this finding. This Court has no authority to disturb the finding unless it is upon an issue not proper to be referred, or is based upon an error of law or mixed question of fact and law, or where it is not supported by any material evidence. *Coates v. Thompson*, supra and authorities cited therein. None of the 3 exceptions to the rule appear to apply to the present question.

No merit is found in plaintiff's second issue.

The judgment of the Trial Court is affirmed. Costs on appeal are taxes one half to plaintiffs and one half to defendant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and KOCH, JJ., concur.