IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2012

## DALE ENGLAND, ET AL. v. ROBERT ENGLAND, ET AL.

**Appeal from the Chancery Court for Union County**
**No. 5520      Billy J. White, Chancellor**

No. E2011-02094-COA-R3-CV-FILED-OCTOBER 2, 2012

This case is a property dispute between two brothers regarding the width of a right-of-way that affects both their properties. The plaintiff claims the right-of-way is eight feet wide and the defendant should be prevented from expanding the gravel road that runs along the right-of-way to 25 feet because the expansion would require the plaintiff to remove fences, septic tanks, and other permanent structures. The trial court ruled that the right-of-way created by the brothers' father was intended to be 25 feet wide. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Michael S. Shipwash, Knoxville, Tennessee, for the appellants, Dale England and Barbara England.

B.J. Reed, Knoxville, Tennessee, for the appellees, Robert England and Alice Mae England.

**OPINION**

**I. BACKGROUND**

This case, filed in April 2008, arises from a family dispute. At issue is the width of a right-of-way known as England Lane.

W.F. England ("W.F."), the father of the plaintiff, Dale England ("Dale"), and the

defendant, Robert England ("Robert"), inherited a 100-acre tract of land in Union County, Tennessee, from his father, W.B. England. Through deeds of his own making, W.F. conveyed most of the property to his eleven children so they would each have a piece of land.[1] He did not, however, deed out the land that comprises England Lane, a road that accesses the back of the 100-acre tract; rather, England Lane serves as a boundary in the deeds to the children. Since W.F. never deeded out the land over which England Lane runs, when he passed away without a will, England Lane became the property of his heirs as tenants in common. Those heirs, W.F.'s children, are Dale, Robert, Lucille Carr, Walter England, Eula Bradley, June Boggs ("June"), Dewey England ("Dewey"), Wayne England, June Lawson, Shirley Graham, and Sheila Long.

Per the testimony of Bruce Butler, a title attorney, in the original deed from W.F. to Dale, there is a mention of England Lane having a width of 21 feet ("crossing England Lane 21 feet."). Shortly after that deed, W.F. gave Dale a correction deed for his property, because the original deed incorrectly describes the land being transferred. The correction deed makes mention of an easement along England Lane but does not specify a width.[2] Butler noted that Dale has bought property from at least two of his siblings by deeds relating that England Lane is a 25-foot right-of-way. Butler testified further that surveyor Perry Walker had prepared a survey in 1992 denoting the width of the right-of-way to be 16 feet. Butler opined that the width of the right-of-way is "25 foot based on . . . the deeds" that Dale received from his siblings.

Both parties have had the property surveyed. The survey for Dale by Billy Easter established that at no point is the gravel road along England Lane 25 feet wide, and that there is nothing in the deeds made by W.F. to indicate that England Lane is meant to be 25 feet wide. Easter stated the average width of the road is actually 15 feet. The survey for Robert, conducted by Ronnie Keener, marked off the right-of-way as being 25 feet wide. Keener based his measurements on the deeds from the other England siblings to Dale, not the original conveyances by W.F. to his children. Easter's center line for the right-of-way agrees with Keener's center line.

Dewey, a sibling to the parties, testified that he helped W.F. set out the right-of-way:

A. . . . It was all just an old horse-drawn road, and I took the center . . . of that and measured twelve-and-a-half feet on each side.

---

[1]Most siblings received these deeds in 1975.

[2]The deed notes as follows: "That England Lane which crosses or traverses this property will remain a free and open easement and right-of-way for ingress and egress and is perpetual and never to be closed."

Q. Yes, sir.

A. And that was where we come up with putting the property pins and the right-of-way.

Q. So when the property was divided, it was property off of a 25-foot right-of-way.

Q. On either side?

A. On either side because we took twelve-and-a-half feet on each side.

THE COURT: Let me ask you a question; who told you to do that or showed you to do that or told you?

A. My daddy. Now, the right-of-way was established I'd say two or three months before the property was ever divided.

* * *

Q. So you're telling us before anybody got a deed from your daddy, at your daddy's instructions you staked out the 25?

A. I staked out the 25-foot right-of-way.

Q. And all of the deeds were made away from there?

A. All of the deeds bordering the right-of-way. They did not cross the right-of-way. . . .

* * *

A. I got no dog in this fight except to tell you the God's truth of what Dad told us to do to lay this out, and that's what I done. It was his saying and his doings. I did not have one thing to do with it except for what he said to do.

Dewey noted that only the corner of the barn came "right at" the edge of the right-of-way when it was laid out.

June, another sibling, testified that W.F. sold her the property on which she lives in

-3-

1967. In regard to the right-of-way, she stated as follows:

A. I was the one that talked my dad into dividing it because I thought that everybody needed a place to live

\* \* \*

A. . . . It went all the way to – into his (pointing) because he –

Q. Into whose?

A. Robert England because he was the one that was on the end . . . .

\* \* \*

Q. How did it get to be 25 feet?

A. Our dad did it. He specified that it would be 25 or so two cars could pass without any trouble.

Dale claims that he owns all of the right-of-way by adverse possession. He acknowledges that Robert has used England Lane as his means of ingress and egress and has the right to an easement over the property. Dale asserts, however, the right-of-way is eight feet wide and Robert should be prevented from expanding the gravel road that runs along the right-of-way to 25 feet because it will require Dale to remove fences, septic tanks, and permanent structures. He argues the road has never been 25 feet wide and that the right-of-way should be limited to the width it has been since the parties began using it.

Robert states that after he moved onto the property in 1985, Dale began building his home. In regard to the roadway, Robert testified as follows:

A. . . . I went in there and I got this mobile home, I go in there and cut all of this off, and went in there -- there was a swamp up there, I had to fill it in, and I graded out and fixed the road . . . to where I could even get the mobile home in . . . .

The next thing . . . when I did all of that and moved in down there, I was down there probably 10 or more years I know before [Dale] ever decided to come down there and build a house. And the[re] wasn't a thing -- now, all of this stuff that you see on these things, he put them in after, after I had the road and

-4-

everything built.

Like the church up there, that was d[one] after that, and th[ese] here trailers down through there, he put th[ose] in after I built that road. . . .

* * *

Q. When did you have the road cut in?

A. Well, now we moved over there, I think, it was in '85, so I cut the road in there and did that clearing up before that. . . .

* * *

Q. And did you build the road 25 feet wide?

A. No. I built the road like anybody would . . . I built it as wide as I needed it . . . and packed it down . . . put your crush and run in and everything and kept it graveled up to the last five year.

Now, the last five year . . . they told me not to do [any]thing to that road and stay in the[] tracks until this goes to court. . . .

Robert denies that Dale has acquired any other title by any means, adverse possession or otherwise.

On April 5, 2011, the trial court held that "[t]he right-of-way known as England Lane is a 25 foot wide permanent easement for ingress and egress established by the father of the parties" and "[t]he location of the right-of-way is established in accordance with the survey of Ronnie Keener . . . dated January 23, 2009 . . . ." Dale filed a timely notice of appeal.

## II. ISSUES

The issues raised on appeal are restated as follows:

1. Whether the trial court erred in finding that England Lane is a 25-foot right-of-way.

2. Whether the trial court erred in allowing certain testimony under the hearsay

exception.

3. Whether the trial court erred in not finding for Dale on the basis of adverse possession.

## III. STANDARD OF REVIEW

Unless otherwise required, a review of findings of fact by a trial court is conducted de novo upon the record, with a presumption that the trial court's findings of fact are correct. Tenn. R. App. P. 13(d); *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App 2006). We impute no presumption of correctness, however, on a trial court's conclusions of law. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).

In resolving a boundary dispute, the trier of fact must evaluate the evidence and assess the credibility of witnesses. *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App 1999). We give great weight to a trial court's determinations regarding witness credibility. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. DISCUSSION

### A.

Citing the rule in *Mix v. Miller,* 27 S.W.3d 508 (Tenn. Ct. App 1999),[3] Dale asserts in the first issue that the landmarks on and around the land at issue reveal the survey by Keener is incorrect. Dale argues the road itself, a barn located near England Lane, septic tanks, and fences should be considered in determining the correct dimensions of the right-of-way. The trial court appears to have relied on information from both surveys as well as the testimony from the England siblings and Butler. We do not find that the trial judge abused his discretion in making his determinations, as the evidence does not preponderate against the findings of the trial court. As to the additional arguments raised by Dale regarding the

---

[3]*Mix* provides that the court must look to "first the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix*, 27 S.W. 3d at 514. Dale objects to Keener's reliance on the deeds related to the property he obtained from his siblings.

first issue,[4] we find them unpersuasive.

**B.**

As to the second issue, Dale argues that statements about what W.F., who is now deceased, said to his children about the width of the right-of-way should be excluded as hearsay. Robert testified that "when I got my property [W.F.] said I'm gonna have to give you the property in the back because there's no way that I can give everybody road frontage property. And [W.F.] said I want to give you a 25-foot right-of-way."

Tennessee has a hearsay exception when testimony is offered about what a previous owner of a property has said. "Declarations of former owners which took place during ownership and especially accompanied with possession are admissible to establish boundary lines. It is not necessary that the former owner testify to the declarations. They may be testified to by third parties who heard the declarations." *Norman v. Hoyt*, 667 S.W.2d 88, 90 (Tenn. 1983) (citing *Davis v. Jones*, 40 Tenn. 603, 606 (Tenn. 1859)).

Dale also argues that the Dead Man's statute precludes the testimony regarding W.F.'s statements regarding the width of the right-of-way. The Dead Man's statute deals with "actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward . . . ." Tenn. Code Ann. § 24-1-203. The purpose of the Dead Man's statute is to protect decedents' estates from fraudulent or false claims by interested parties. It is not applicable under these circumstances.

**C.**

The third argument by Dale is that he has acquired title by adverse possession or prescription. A party intending to claim property by adverse possession must remain in possession of the property for seven years under a claim of right or for 20 years without color of title. His possession must also meet all the following requirements: it must be open, actual, continuous, exclusive, adverse, and notorious. *See Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App. 1987). The trial court found that Dale did not gain title to any part of the right-of-way by adverse possession (or prescription), noting that the other cotenants had not been ousted.

---

[4]Dale asserted the right-of-way has been established by acquiescence and oral agreement.

"'An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant in common of his cotenant or cotenants from the common property of which they are entitled to possession.'" *Envision Props, LLC v. Johnson*, No. E2005-00634-COA-R3-CV, 2005 WL 2860195, at *5-6 (quoting *Moore v. Cole*, 289 S.W.2d 695, 699 (Tenn. 1956)). An "'ouster does not necessarily mean a physical expulsion of one party by another, but it requires the party claiming adversely to perform some act that makes it clear to his cotenant that []he is being excluded from ownership.'" *Id.* (quoting *NeSmith v. Alsup*, No. 01A01-9809-CH00509, 1999 WL 557620, at *4 (Tenn. Ct. App. Aug. 2, 1999)). In *Drewery v. Nelms*, the Supreme Court explained ouster as follows:

> This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice to his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession.

117 S.W. 946, 948 (Tenn. 1915).

Common-law prescription has been recognized by the Tennessee Supreme Court. The Court stated that "the exclusive and uninterrupted possession by one tenant in common of land for a great number of years . . . without any account with his cotenants . . . becomes evidence of a title to such sole possession." *Marr's Heirs v. Gilliam*, 41 Tenn. 488, 501 (Tenn. 1860). Title by prescription has continued to be recognized since *Marr's Heirs*. *See Drewery v. Nelms*, 177 S.W. 946, 948 (Tenn. 1915); *Eckhardt v. Eckhardt*, 305 S.W.2d 346, (Tenn. Ct. App. 1957); *Morgan v. Dillard*, 456 S.W.2d 359, 363 (Tenn. Ct. App. 1970). Two recent Tennessee cases to address common-law prescription are *Scott v. Yarbro*, No. W2008-00090-COA-R3CV, 2008 WL 4613979 (Tenn. Ct. App. Oct. 15, 2008) and *Amos v. Taylor*, No. M2006-02170-COA-R3-CV, 2008 WL 1891443 (Tenn. Ct. App. April 28, 2008).

*Scott* takes these earlier cases and restates the elements necessary to establish title by prescription as (1) the prescriptive holder has been in exclusive and uninterrupted possession of the land in question for more than 20 years, claiming the same as his own without any accounting to his cotenants or claim on their part, with the cotenants being under no disability

to assert their rights, and (2) the holder's occupancy of the property in question was without the actual or implied permission of the other cotenants. *Id.* at \*4 (citing *Brown v. Daly*, 968 S.W.2d 814, 817 (Tenn. Ct. App. 1997)).

*Amos*, on the other hand, restates the elements for common-law prescription slightly differently, stating the elements as (1) "the prescriptive holder must show exclusive and uninterrupted possession of the land in question for more than twenty years, during which time he must claim the same as his own without any accounting to his cotenants or claim on their part," and (2)"the party asserting title must also show that none of the cotenants were under a disability to assert their rights to the property." *Amos v. Taylor,* M2006-02170-COA-R3-CV, 2008 WL 1891443 (Tenn. Ct. App. April 28, 2008) at \*5. Although these elements differ, both *Scott* and *Amos* derive their elements for common-law prescription from *Livesay v. Keaton*, 611 S.W.2d 581 (Tenn. Ct. App. 1980). Finding that neither *Amos* nor *Scott* completely encompasses the elements of common-law prescription from *Livesay*, we restate the elements for common-law prescription, using *Livesay*, as follows:

(a)     The prescriptive holder must have been in exclusive and uninterrupted possession of the land for a period of twenty years or more, claiming the land as his own without any accounting to his cotenants.

(b)     The prescriptive holder's cotenants must have been under no disability to assert their rights during the prescriptive period of twenty years

(c)     The prescriptive holder's occupancy must have been without the permission, actual or implied, of the other cotenants.

If any of these elements is not proven, the doctrine of title by prescription does not apply.

Dale testified that in 1975, he and W.F. put a fence down beside England Lane on the left-hand side to pasture livestock, and, in 1976, he put in a septic tank and field line. However, W.F. retained ownership of the tract in dispute during that time frame; thus, such actions by Dale at those times, acquiesced in by his father, could not be considered to be notice to, or without the permission of, the cotenants. We note that the presumption of title may be rebutted by evidence that possession was being tolerated or indulged. *See Walker v. Moore*, 745 S.W.2d 292, 295 (Tenn. Ct. App. 1987). Further, occupation of property by one cotenant is not generally regarded as adverse to the claim of another cotenant. *See NeSmith*, 1999 WL 557620, at \*4. Additionally, because possession by a tenant in common is regarded as possession by himself and all the other cotenants, the possession of one tenant in common is not ordinarily held to be exclusive. *See Howell v. Howell*, No. 01A01-9806-

CV-00301, 1999 WL 536261, at *9 (Tenn. Ct. App. July 27, 1999) (citing *Moore v. Cole*, 289 S.W.2d 695 (Tenn. 1956)).  From our review of the record, the evidence in the record is conflicting and insufficient to establish all the necessary elements for adverse possession or title by prescription.

## V.  CONCLUSION

We affirm the judgment of the trial court and remand.  Costs of the appeal are assessed to the appellants, Dale England and Barbara England.

_____
JOHN W. McCLARTY, JUDGE